765 So.2d 829 (2000)
Ralph D. BRYAN, Appellant,
v.
Joyce Bethea BRYAN, Appellee.
No. 1D99-3492.
District Court of Appeal of Florida, First District.
August 16, 2000.
*830 E. Jane Brehany, Pensacola, for Appellant.
Mary L. Mattair, Pensacola, for Appellee.
BROWNING, J.
Ralph D. "Randy" Bryan, the former husband, appeals certain provisions of a 1999 final judgment and an amended final judgment dissolving his April 1988 marriage to Joyce Bethea Bryan, the appellee and former wife. The appellant contends that the trial court erred, in four key respects: 1) by awarding rehabilitative alimony to the appellee for a period of five years; 2) by calculating his child support obligation without including in the appellee's income the rental value of the marital home, the exclusive possession and use of which were awarded to her during the minor child's minority; 3) by unequally distributing the parties' assets and liabilities without including sufficient findings; and 4) by requiring the appellant to pay 30 per cent of the appellee's attorney's fees and costs. We affirm the final judgments insofar as they dissolved the parties' marriage and designated the appellee as the primary residential parent of the minor child. However, we conclude that the trial court abused its discretion by awarding rehabilitative alimony to "bridge the gap" for five years, by failing to take into account the rental value of the former marital residence in calculating the appellee's income and the appellant's child-support obligation, and by effecting a substantially unequal distribution of the assets and liabilities without including adequate findings of fact to justify the result. In correcting these errors on remand, the record basis on which the issue of attorney's fees and costs was resolved very well may change, requiring the trial court to review whether an award of all or a portion of attorney's fees and costs is still appropriate.

I. REHABILITATIVE ALIMONY
The 40-year-old appellant was ordered to pay rehabilitative alimony for five years in the amount of $1,250.00 monthly. In the final judgment, the trial court found that rehabilitative alimony is proper to allow the 46-year-old appellee "to complete her education, stabilize her emotional circumstances, and additionally to bridge the gap." The appellant argues that the lower court erred in awarding rehabilitative alimony where the appellee made no such request. See Fullerton v. Fullerton, 709 So.2d 162 (Fla. 5th DCA 1998). Proceedings brought under Chapter 61, Florida Statutes, are equitable in nature and, accordingly, "are governed by *831 basic rules of fairness as opposed to a strict rule of law." Rosen v. Rosen, 696 So.2d 697, 700 (Fla.1997). Mindful of this consideration, we conclude that the record discloses that the issue was tried by implied consent. See Fla. R. Civ. P. 1.190(b); Siverling v. Siverling, 447 So.2d 996 (Fla. 5th DCA 1984); Robinson v. Robinson, 340 So.2d 935 (Fla. 4th DCA 1976). In the fifth paragraph of her petition for dissolution, the appellee requested temporary, permanent, and lump-sum alimony. However, on direct examination, the appellee testified (without an objection from opposing counsel) that she was seeking permanent alimony as well as alimony to rehabilitate herself. The issue is properly before us for review. See Purvis v. Purvis, 732 So.2d 460 (Fla. 1st DCA 1999); Hemraj v. Hemraj, 620 So.2d 1300 (Fla. 4th DCA 1993); Shrine v. Shrine, 429 So.2d 765 (Fla. 1st DCA 1983).
"This court has held that rehabilitative alimony cannot be awarded absent a rehabilitative plan." Fullerton, 709 So.2d at 164. The appellant correctly notes that the appellee did not present a specific written or oral rehabilitation plan. Thus, the award of rehabilitative alimony cannot stand. See Beasley v. Beasley, 717 So.2d 208, 209 (Fla. 5th DCA 1998); Register v. Register, 690 So.2d 750 (Fla. 5th DCA 1997) (party requesting rehabilitative alimony must prove necessity for award and present plan for rehabilitation). Our inquiry does not end here, however, for the absence of a specific rehabilitative plan will not rule out an award on some other basis, such as for transitional, short-term assistance. We have approved alimony to "bridge the gap," i.e., to assist the payee spouse "in making the transition from a married to a single life." Vanbrussel v. Vanbrussel, 710 So.2d 170, 171 (Fla. 1st DCA 1998); Shea v. Shea, 572 So.2d 558, 560 (Fla. 1st DCA 1990). In such instances, where no rehabilitative plan is presented, the bridge-the-gap award must have a relatively brief durational limit. See e.g., Blase v. Blase, 704 So.2d 741 (Fla. 4th DCA 1998); Vick v. Vick, 675 So.2d 714 (Fla. 5th DCA 1996); Iribar v. Iribar, 510 So.2d 1023 (Fla. 3d DCA 1987); Murray v. Murray, 374 So.2d 622 (Fla. 4th DCA 1979). Although a trial court has considerable discretion to award this type of alimony for a reasonable time period, we find that the court abused its discretion in ordering bridge-the-gap alimony for a five-year period. Our holding would not preclude an award of short-term assistance to the appellee.

II. RENTAL VALUE OF MARITAL HOME
In her petition for dissolution of marriage, the appellee asked to be designated the primary residential parent of the minor child. Alleging a special equity by way of her contribution to the purchase of the former marital home using significant premarital assets, the appellee sought the exclusive use and possession of the residence and its contents. The equitable distribution statute provides that in dividing marital assets and liabilities between the parties, the trial court may consider "[t]he desirability of retaining the marital home as a residence for any dependent child of the marriage, or any other party." § 61.075(1)(h), Florida Statutes (1997). The court awarded the appellee exclusive possession and occupancy of the former marital home on Sea Breeze Lane for the approximately three years until the daughter turns 18 or graduates from high school. The home is titled in both parties' names as tenants by the entireties, and each party was made responsible for a pro rata share of the taxes, insurance, and necessary repair and maintenance expenses associated with the former marital home. As of the date of the final hearing, the only instrument encumbering the former marital residence was a home equity loan, which had a monthly payment of $343.00
Having awarded alimony to the appellee, the trial court adjusted the appellant's child-support obligation accordingly. The court reduced the appellant's net monthly *832 income to $3,350.00 and increased the appellee's to $2,160.00, for a combined net monthly income of $5,512.00. The appellant's and appellee's respective shares of income are about 61 and 39 per cent. The appellant was ordered to pay monthly child support in the amount of $618.00 in semi-monthly payments commencing November 15, 1998 until the child reaches age 18.
For the first time on appeal, the appellant argues that the trial court erred in calculating his monthly child support obligation without including, in the income of the appellee as the resident spouse, the rental value of the former marital residence. In support of his position, the appellant relies in part upon the child support guidelines statute, which states in pertinent part:
(2) Income shall be determined on a monthly basis for the obligor and for the obligee as follows:
(a) Gross income shall include, but is not limited to, the following items:
* * *
(13) Reimbursed expenses or in kind payments to the extent that they reduce living expenses.
§ 61.30(2)(a)13, Florida Statutes (1997); Hinton v. Smith, 725 So.2d 1154 (Fla. 2d DCA 1998); Chapoteau v. Chapoteau, 659 So.2d 1381 (Fla. 3d DCA 1995).
The appellant also relies on Thomas v. Thomas, 712 So.2d 822 (Fla. 2d DCA 1998), where, in the course of dissolution proceedings, the trial court declared the parties tenants in common of the former marital residence and directed each of them to pay one-half of the associated mortgage payments, taxes, and insurance premiums. The former wife, Mrs. Thomas, was granted exclusive use and possession of the home for so long as she and the minor child lived together during the child's minority. Given the former husband, Mr. Thomas's, 48 per cent share of the parties' combined net income, the court ordered him to pay monthly child support of $554.00 pursuant to the statutory guidelines. The trial court explained that the former husband was being directed to pay the property taxes based on his obligation as a tenant in common. The court determined that Mr. Thomas's child-support obligation should not be reduced by a credit for one-half the fair rental value of the home, for Mrs. Thomas's exclusive right to occupy it was an aspect of child support. See id. at 823. Reviewing the lower tribunal's rulings in Mr. Thomas's appeal, the Second District Court noted that the trial court had correctly applied the applicable law of real property governing the responsibility of each tenant in common for property expenses in proportion to his or her ownership, with the attendant entitlement "to his or her proportionate share of the property's use, enjoyment, and profits." Id. Nevertheless, the district court acknowledged the applicability of family law principles too:
[W]hen an owner's possession of the property is an aspect of court-ordered support, the nonresident may not claim rent, even though the resident owner has been granted the exclusive right to occupy the property, and even though the nonresident has been directed to pay his or her share of the property expenses. See Berger v. Berger, 559 So.2d 737 (Fla. 5th DCA 1990)
Thomas, 712 So.2d at 823; Richardson v. Richardson, 722 So.2d 280 (Fla. 5th DCA 1998). The appellate court concluded that the trial court had correctly refused to apply Mr. Thomas's share of the marital home's rental value against his child-support obligation. See id.
The inquiry does not end there, however. Applying the law relating to child support, the district court indicated that the former wife's exclusive right of occupation of the former marital home should have been considered. The panel cited section 61.30(2)(a)13, Florida Statutes, which provides that in calculating child support, a party's gross income includes *833 "in kind payments to the extent that they reduce living expenses." The district court expressly held that "[t]hese include housing or housing expenses." Id. at 823-24. Applying this rule, the panel stated:
Here, but for the terms of the final judgment, Mrs. Thomas could not have occupied the home to the exclusion of Mr. Thomas without either paying him half the property's fair rental value or incurring his offset in that amount against his share of the property expenses. Clearly, then, Mrs. Thomas's living expenses were reduced by that sum, and the statute mandated its inclusion in her gross income.
Id. at 824. Mrs. Thomas's argument that she had been awarded occupancy of the former marital residence pursuant to the trial court's authority under the equitable distribution statute was unavailing, in that section 61.075(1)(h) "does not alter the operation of section 61.30(2)(a)." See id. The district court reversed the part of the final judgment establishing the former husband's monthly child-support obligation, and remanded with instructions to recalculate child support after determining the fair rental value of the former marital residence and including one-half of that sum in the former wife's gross monthly income. See id.
Asserting that the lower court's calculation of the appellant's child-support obligation is correct, the appellee notes that no evidence was presented as to what is the fair rental value of the former marital home. Even though the specific issue of fair rental value was not raised by the appellant or addressed by the trial court, we believe that it is appropriate for consideration on remand because our holdings in Issues One and Three regarding alimony and equitable distribution, respectively, will require the court to reconsider the parties' respective financial positions anyway which, in turn, could affect the calculation of child support. See § 61.30, Florida Statutes (1997); see Cooper v. Cooper, 760 So.2d 1048, 1049 (Fla. 2d DCA 2000) (although the trial court did not address rental value of former husband's exclusive use and occupancy of the former marital home with the minor child, and for the first time on appeal, former wife raised the issue of the effect of exclusive use and occupancy of the residence on the determination of former husband's gross income, other factors required reconsideration of child-support award, which was reversed and remanded for reconsideration in light of Thomas v. Thomas and for findings regarding parties' incomes). Additionally, given the nature of her pleadings and the rulings by the trial court, the appellee could not reasonably claim that the subject of determining a proper child-support amount was not raised and considered below. Cf. Connolly v. Connolly, 448 So.2d 641, 642 (Fla. 4th DCA 1984) (trial court erred in awarding former wife alimony, child support, de facto child custody, and in determining visitation rights, absent a pleading, prayer, or other predicate requesting such relief). It was the appellee herself who petitioned not only for primary residential authority over the minor child but also for exclusive use and possession of the former marital residence as a means of support during the child's minority. Her exclusive possession under these circumstances constitutes "an aspect of child support," Berger, supra, 559 So.2d at 739, and, as such, makes the instant case factually very similar to Thomas. Like Mrs. Thomas, the appellee was given exclusive possession and occupancy of the residence with the minor child according to the equitable principles of family law, as construed in the final judgment. Just as the district court in Thomas noted in 712 So.2d at 823-24, the domestic concerns raised in the proceedings below, and to be considered by the trial court, are different from those matters that would come into play solely under the law of real property. Whatever the fair rental value of the property might be, the appellee's monthly living expenses were reduced by that sum, and section 61.30(2)(a)13 mandates that this financial benefit be considered in the *834 calculation of her gross income. See id. at 824. Once the trial court decided to order exclusive use of the former marital residence to the appellee as a form of child support, the determination of the home's fair rental value, and the amount, became relevant.
Accordingly, we direct the trial court, on remand, to determine the appropriate rental value of the former marital residence and, in accordance with the interpretation of statutory requirements set forth in Thomas, to recalculate the appellee's income for purposes of calculating child support. While adhering to the position taken by the Second District Court in Thomas, we acknowledge that another sister court has construed section 61.30(2)(a)13 differently, has reached a contrary result, and has certified conflict with Thomas. See Hanley v. Hanley, 734 So.2d 529, 530-31 (Fla. 4th DCA) (on mot. for certif.), rev. dism., 743 So.2d 12 (Fla. 1999). Contrary to the appellee's position, our view is that neither Chapoteau nor Hinton involves facts similar to the facts in the instant case and the facts in Thomas.

III. UNEQUAL DISTRIBUTION OF ASSETS AND LIABILITIES
The appellant contends that the lower court erred by providing for an unequal distribution of marital assets and liabilities without including clear findings of fact to support the result. We agree with the appellant's position on this issue. According to the equitable distribution statute, the trial court "must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors." § 61.075(1), Florida Statutes (1997). Thus, absent countervailing circumstances, the starting point in distribution is an approximately equal division of marital assets. See Bell v. Bell, 587 So.2d 642 (Fla. 1st DCA 1991). Pertinent among the enumerated relevant factors governing the distribution are each spouse's contributions to the marriage (e.g., homemaking and providing care and education for the child(ren)) and "to the acquisition, enhancement, and production of income," as well as "[a]ny other factors necessary to do equity and justice between the parties." § 61.075(1)(a), (g) & (j). Absent the entry and filing of a stipulation and agreement, any distribution must be supported by factual findings based on competent substantial evidence with reference to the enumerated factors in statutory subsection (1). See § 61.075(3).
Competent substantial evidence in the record supports the trial court's finding that the former marital residence is a "marital asset," which is defined to include assets acquired during the marriage "individually by either spouse or jointly by them." § 61.075(5)(a)1. As the parties own the home as tenants by the entireties, another subsection of this statute is relevant:
All real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset. If, in any case, a party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim for a special equity.
§ 61.075(5)(a)5. In her petition for dissolution, the appellee alleged a special equity in the former marital home based on her contribution to its purchase using significant pre-marital funds, including monies from guardianship commissions and her retirement fund from the State of Georgia teaching system. At the dissolution hearing, she testified that the residence had been purchased also with pre-marital funds from a C.D. from the sale of her Albany, Georgia, home and from social security death benefits from her son's father.
The trial court found that the appellee had contributed significantly more non-marital assets than the appellant to the acquisition of the former marital residence. Specifically, the court found that she had contributed $60,000.00 toward the purchase *835 price of $160,000.00. The court found that the appellee is entitled to a 65 per cent interest in the former marital home, and the appellant is entitled to a 35 per cent interest. An expert witness testified that the former marital residence had a current value of $209,000.00. The overall equitable distribution resulted in an award of 60 per cent of the net assets to the appellee and 40 per cent to the appellant, which the court deemed equitable under the facts and circumstances of this case. However, at a subsequent proceeding held upon the appellant's motion for rehearing, the trial court expressly stated that it had not found a "special equity" arising from the appellee's non-marital contributions. The final judgment includes this finding regarding the appellee's $60,000.00 contribution: "There was no evidence that the Wife did not intend to make a gift." The appellant correctly notes that these various findings, taken together, are inconsistent. Although the lower court purported not to be recognizing a special equity in the appellee's favor regarding the former marital residence, the final result appears to do exactly that. The appellant also challenges the lower court's award of $2,550.00 of $20,800.00 in his Sun Trust account to the appellee despite having found that his account is non-marital property.
In support of affirmance on this issue, the appellee asserts that the trial court could have based the unequal distribution on other factors allowed under the statute, including 1) the parties' agreement that the appellee's main focus would be on home-making and child-rearing rather than on other full-time employment outside the home; 2) the fact that the appellee worked part-time as a librarian, earning about $15,000.00 annually, and in the past had earned as much as $32,000.00 as a full-time teacher/librarian, whereas the appellant, an engineer, earned a salary of $66,000.00 a year and had demonstrated a past ability to earn as much as $80,000.00 annually; 3) the fact that the appellee had followed the appellant as he changed jobs, and in so doing she interrupted and hindered her own prospects for career advancement; and 4) the fact that the appellant had substantially more financial resources available from non-marital assets.
While all of these factors very well could have been considered by the trial court in fashioning the distribution of assets and liabilities, we are unable to reconcile the trial court's various findings regarding the appellee's contributions to the purchase of the former marital home. Also, we cannot discern the trial court's reason for distributing the appellant's Sun Trust account as it did. Accordingly, we must reverse the equitable distribution award and remand for the court to clarify and explain its findings. Although a trial court need not equalize the parties' financial positions, an unequal distribution of marital assets and liabilities must be supported by adequate, consistent findings. See Goosby v. Lawrence, 711 So.2d 577 (Fla. 3d DCA 1998).

IV. ATTORNEY'S FEES AND COSTS
The trial court ordered the appellant to pay 30 per cent of the appellee's attorney's fees and costs. In the amended final judgment, the court found that her fees and costs totaled $10,652.00, of which he would be responsible for $3,195.60. It is well-established that an award of attorney's fees requires a determination of one party's financial need and the other party's ability to pay. This involves a comparison of their respective financial resources. See § 61.16(1), Florida Statutes (1997). The appellee testified that she lacked the ability to pay her attorney's fees and had to charge her initial retainer on a bank card. The appellant testified that he still owed his former lawyer about $200.00 and had to charge his current attorney's retainer fee with a credit card. Because our holding as to the appellant's first three issues could affect the parties' respective financial positions, we reverse the award of 30 *836 percent of the appellee's attorney's fees and costs and remand for reconsideration of entitlement thereto in light of any additional findings of fact and conclusions of law to be made by the trial court.
The final judgment and amended final judgment are AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
ERVIN and VAN NORTWICK, JJ., CONCUR.