796 So.2d 1249 (2001)
Mitchel KALMANSON, Appellant,
v.
Donna J. KALMANSON, Appellee.
Nos. 5D00-2230, 5D00-2231, 5D00-2322.
District Court of Appeal of Florida, Fifth District.
October 12, 2001.
*1250 Stacy D. Blank and Mark Rabinowitz of Holland & Knight, LLP, Tampa, for Appellant.
Shannon McLin Carlyle, The Carlyle Appellate Law Firm, and James F. Keedy of Keedy & Rohe, P.A., Leesburg, for Appellee.
THOMPSON, C.J.
Mitchel Kalmanson (husband) filed three interlocutory appeals challenging three orders of the trial court below in this marital dissolution case. This Court has jurisdiction pursuant to Florida Rules of Appellate Procedure 9.130(a)(3)(C)(ii), (iii), and (iv). This Court consolidated the three appeals without objection.

Case No. 5D00-2230 & 5D00-2231
Donna J. Kalmanson (wife) filed a motion she titled a "Motion For Partial Equitable Distribution" on April 19, 2000, with an attached list of the husband's alleged business and personal bank accounts. The motion explained that the wife was "attempting to rehabilitate herself to become a licensed building contractor by taking the appropriate study course and attending the appropriate classes to prepare to take the exam." She argued that because the husband "had sole and complete access and control of all of the parties' assets," she should be given an equitable distribution award prior to the final judgment in order to effect her plan. This award would have been in addition to her temporary alimony award of $3,000.00 a month, which had been previously ordered.
The June 19, 2000, hearing on the wife's motion (and other various motions) revealed that the husband was belligerent with the trial court and was making discovery very difficult for the wife. The attorney for the wife explained that he anticipated that the wife may not be awarded permanent alimony and therefore counseled her to seek to "come up with a plan of rehabilitation." Therefore, she had obtained the contractor's license but needed money to become active: "$100,000.00 or so" from property the wife's counsel assured the court would turn out to be marital. The trial court relied on a list of the husband's assets that was not introduced into evidence but was referred to extensively by the wife's counsel.
The trial court ruled in favor of the wife on the motion for partial equitable distribution and ordered the husband to deliver $100,000.00 to the wife within fifteen working days. That was reversible error. Even if we treat this as a temporary rehabilitative alimony award as the trial court clearly intended it to be, the wife was required to present evidence establishing the rehabilitative plan, the objective of the rehabilitation, the areas in which rehabilitation was desired, and the actual amount of rehabilitative alimony necessary. See Bissell v. Bissell, 622 So.2d 532 (Fla. 1st DCA 1993).
Subsequently, the wife moved to have the husband held in indirect criminal contempt because he refused to transfer the monies. She suggested that the court could "transfer assets in the possession *1251 and control of the Husband to the Wife to satisfy the Court's order." After hearing argument, the trial court transferred ownership of the parties' marital home to the wife in order to satisfy the $100,000.00 partial equitable distribution. Because that order sought to enforce the earlier order which we have reversed, that order is vacated.[1]

Case No. 5D00-2322
The wife filed her "Second Motion for Temporary Attorney's Fees, Suit Money and Costs and Memorandum of Law" on June 9, 2000. On July 21, 2000, a hearing was held on the motion (and other pending motions). The husband failed to appear at this hearing despite having been given notice. In order to show the husband had the ability to pay the requested attorney's fees, the wife called several of the husband's previous attorneys as witnesses.[2] Their testimony revealed that the husband had paid $2,500.00, $3,857.70, and $21,750.25 respectively to three of his previous attorneys while representing the husband in this proceeding.
The wife's counsel testified that his fees through the previous month were $74,946.54, and that the fees he expected to incur were $66,290.00. Subtracting what he had already been paid, he expected additional fees of $131,246.54. Counsel explained why his fees were so high:
This case is an extremely unusual case. The fees are very high, in my opinion. The reason that the fees are very high is that Mr. Kalmanson will not comply with the rules of procedure. He will not abide by the orders of the court. It is impossible, nearly impossible to reach typical stipulations or agreements with Mr. Kalmanson's counsel in order to cut corners and to save time.
In this case there have been three separate court orders obtained by my office as a result of Mr. Kalmanson's failure to produce documents or failure to respond to subpoenas served upon him in his capacity as owner or president of various businesses which he owns. Mr. Kalmanson failed to abide by any of those orders of discovery.
The wife's counsel goes on in a similar vein for several pages of the transcript, cataloguing the husband's non-responsiveness and truculence.
After the wife's counsel testified, Charles Davis, an acquaintance of the Kalmansons, testified that the husband "basically said that he would drag this [dissolution proceeding] out as long as he could because he has a lot more money than she does and he'd eventually just bleed her dry. She can't live without money." Following the testimony and argument, the trial court ordered the husband to pay the wife's counsel a fee of $130,000.00.
Any appellate review of an award of attorney's fees in proceedings for dissolution of marriage should begin with Section 61.16(1), Florida Statutes (2000), which provides in pertinent part:
The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter....
See Rosen v. Rosen, 696 So.2d 697, 699 (Fla.1997). The trial court must "look to each spouse's need for suit money versus *1252 each spouse's respective ability to pay." Id.
Here, the trial court did just that. The husband in his appeal only attacks the wife's proof as to his ability to pay, complaining that there was none offered. The husband is wrong. Unlike the hearing on the motion for partial equitable distribution, the trial court conducted an evidentiary hearing on the motion for fees and heard from several witnesses. As for the husband's ability to pay, several of his previous attorneys testified that there never was a problem being paid by the husband, and that those fees had totaled close to $30,000.00. Although that is not a paltry sum, it is not close to the $130,000.00 the trial judge ordered the husband to pay to the wife. Nevertheless, it is some evidence of the husband's ability to pay large attorney's fees in this case.
Moreover, this court must consider that the husband specifically told an acquaintance that he would "drag this [dissolution proceeding] out as long as he could because he has a lot more money than she does and he'd eventually just bleed her dry. She can't live without money." This statement evidences, perhaps more than any financial record could, that the husband had more than enough money to pay off any attorney's fee he expected to incur as long as he dragged out the divorce. And if he could pay off his own bills, then he should be required to pay those incurred by his wife, who had the need.[3]
The purpose of Section 61.16 is "to ensure that both parties have similar access to competent legal counsel." Rosen, 696 So.2d at 699. Moreover, section 61.16 "constitutes a broad grant of discretion... [to the trial court to], `from time to time'... award a reasonable attorney's fee." Id. at 700. Besides considering need and ability to pay, the trial court is required to look at other factors, including the history of the litigation, the merits of the respective positions, whether the litigation is maintained primarily to harass, or whether a defense is raised mainly to frustrate or stall, among other factors. Id. It is obvious that the trial court looked at these factors and used his broad discretion to fashion a fair remedy to make sure that the husband did not take advantage of the unequal footing in this case.
AFFIRMED in part; REVERSED in part; REMANDED for proceedings in accordance herewith.
HARRIS and SAWAYA, JJ., concur.
NOTES
[1] That order also set out that the proceeds of the sale of the home could be used to pay off the wife's attorney's fee, which we discuss below.
[2] In fact, during this dissolution proceeding five attorneys withdrew from their representation of the husband.
[3] The wife put on testimony of her need and the husband does not contend in his appeal that she did not have the need, thus that prong of the test for an award of attorney's fees in a dissolution proceeding is not examined here.