843 So.2d 295 (2003)
Mary Lou LAYENI, Appellant/Cross-Appellee,
v.
Kehinde A. LAYENI, Appellee/Cross-Appellant.
No. 5D01-3376.
District Court of Appeal of Florida, Fifth District.
February 28, 2003.
Rehearing Denied April 23, 2003.
*296 Marcia K. Lippincott of Marcia K. Lippincott, P. A., Lake Mary, for Appellant/Cross-Appellee.
Shannon McLin Carlyle and Gilbert S. Goshorn, Jr. of The Carlyle Appellate Law Firm, The Villages, for Appellee/Cross-Appellant.
ORFINGER, J.
The former wife, Mary Lou Layeni, appeals the final judgment of dissolution of marriage terminating her marriage to Kehinde A. Layeni, the former husband. She argues that the trial judge erred by denying her request for permanent and rehabilitative alimony and by failing to properly value the former husband's interest in his medical practice. She further contends the trial court erred in calculating the former husband's income available for child or spousal support. On cross-appeal, the former husband alleges the trial court erred by requiring him to maintain a life insurance policy naming the former wife as the beneficiary. We affirm in part and reverse in part.
*297 The parties were married for just over seven years. During the course of the marriage, two children were born. At the time of the final hearing, the former husband was a forty-two-year-old medical doctor specializing in cardiology. He worked in a professional association with two other doctors during most of the marriage. The former wife, forty-four years old at the time of the final hearing, did not work outside the home during the marriage. The parties enjoyed an upper-middle-class lifestyle with average gross earnings of approximately $375,000 per year. Throughout the parties' marriage, the former wife was a full-time homemaker, devoting her efforts to caring for the family. Before the marriage, the former wife worked in New York as a cardiology technician earning $40,000 per year. However, due in part to one of the children's special needs and the former wife's impaired health as a result of several serious illnesses, her earning potential was imputed to be only $17,000 per year.

EQUITABLE DISTRIBUTION
We first consider whether the trial court erred in determining the value of the former husband's medical practice. The parties' disagreement turns on whether the former husband's net accounts receivable should be included in calculating the value of his medical practice. Relying on Leone v. Leone, 577 So.2d 587 (Fla. 3d DCA 1990), the trial judge denied the former wife an equitable interest in the accounts receivable, concluding that it was from this income that the former husband would be required to make his support payments. We find the trial court erred in concluding that, as a matter of law, accounts receivable cannot be included in the valuation of marital assets. Staman v. Staman, 622 So.2d 1147 (Fla. 1st DCA 1993); Spillert v. Spillert, 564 So.2d 1146, 1148 (Fla. 1st DCA 1990); Carr v. Carr, 522 So.2d 880, 885 (Fla. 1st DCA 1988) (finding error in trial court's exclusion from marital assets of the tangible assets of husband's medical practice, including accounts receivable). We believe the holding in Leone was based on its unique facts. On remand, the trial court should include the net value of the former husband's accounts receivable in determining the value of his medical practice so that the trial court can distribute the assets in an equitable manner, given the overall division of marital property. See § 61.075, Fla. Stat. (1998).

THE CALCULATION OF THE FORMER HUSBAND'S INCOME
The parties agree that the trial court erred by failing to consider automobile and insurance benefits paid on behalf of the former husband by his medical practice. Those payments, totaling $2,577.95 monthly, and representing automobile lease payments and insurance and health, dental, and life insurance, must be included as income to the former husband on remand. See § 61.30(2)(a)(13), Fla. Stat. (1998); Cozier v. Cozier, 819 So.2d 834, 836 (Fla. 2d DCA 2002) (although the value of family medical insurance provided by the husband's employment and family business was properly added to the husband's gross income as an employment benefit for the purpose of awarding alimony and child support, the trial court erred by failing to allow a corresponding deduction for the amount of the insurance).

PERMANENT ALIMONY
The former wife next argues that the trial court's decision to deny permanent alimony was an abuse of the trial court's discretion. While if permitted to reweigh the evidence we might have reached a different result on the issue of *298 permanent alimony, we cannot conclude that the trial court abused its broad discretion in denying an award of permanent alimony to the former wife in this relatively short-term marriage. As we said in Vitalis v. Vitalis, 799 So.2d 1127, 1130 (Fla. 5th DCA 2001):
In a dissolution proceeding, the trial court possess broad discretion to do equity between the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980); Doyle v. Doyle, 789 So.2d 499, 501 (Fla. 5th DCA 2001). The standard of review is whether the trial court abused its discretion. Canakaris, 382 So.2d at 1202-03. In reviewing a dissolution judgment, this court looks at the judgment as a whole in determining whether the trial court abused its discretion. Hamlet v. Hamlet, 583 So.2d 654, 657 (Fla.1991). "It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the evidence. Rather, the test is whether the judgment of the trial court is supported by competent evidence." Deakyne v. Deakyne, 460 So.2d 582, 583 (Fla. 5th DCA 1984) (citing Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983)).
We do, however, reach an opposite conclusion regarding the trial court's denial of rehabilitative alimony to the former wife because we find the trial court misapplied the law.

REHABILITATIVE ALIMONY
The former wife argues that the trial court denied her request for rehabilitative alimony because she failed to present a written rehabilitative plan at the dissolution hearing. The former wife asserts that through her testimony, she presented an oral rehabilitative plan, and argues that this is sufficient.
A review of the record shows that the former wife testified that although she attempted to become employed as a cardiology technician, her efforts were unsuccessful. Therefore, she decided to go to college to become a medical records coder. The former wife testified in detail regarding her plans to attend school to pursue a career as a medical records coder, at a total cost of approximately $11,840, excluding spousal support during the rehabilitative period.
The former wife also offered the testimony of Ede Slovan, the coordinator of the New Directions program at Seminole County Community College.[1] Slovan, the former wife's counselor at the college, testified that the former wife took an eight-week remedial course, and then enrolled in some college courses. Slovan testified that the former wife did poorly on several tests administered by the program, particularly in her ability to read, write, and understand the English language. As a result, Slovan recommended that the former wife take certain remedial classes. Slovan testified that according to the school's records, the former wife usually takes one to two classes per semester, and had completed her remedial classes. Slovan further testified that the former wife had begun taking college credit classes, and was taking them though the summer.
The former wife testified that she enrolls in one course per semester because her impaired health and the special needs *299 of her children would not permit a more demanding schedule. The former wife's therapist also testified that the former wife has made a good faith effort at her schooling, but that it has been difficult for her. He believed that the former wife was not capable of handling full-time employment in addition to her duties and responsibilities as a full-time mother.
The former husband argues that the trial court correctly denied rehabilitative alimony because the former wife failed to establish any rehabilitative plan, much less one in writing, as required. "The principal purpose of awarding rehabilitative alimony is to provide funds to the requesting spouse so he or she can establish the capacity for self-support, either through the redevelopment of previous skills or the provision of training necessary to develop potential supportive skills." Hill v. Hooten, 776 So.2d 1004, 1006 (Fla. 5th DCA 2001). Rehabilitative alimony cannot be awarded absent a rehabilitative plan. Fullerton v. Fullerton, 709 So.2d 162, 164 (Fla. 5th DCA 1998). In Brock v. Brock, 682 So.2d 682 (Fla. 5th DCA 1996), this court, in setting forth the requirement of a written rehabilitative plan, said:
Rehabilitative alimony is for a time certain or until a specific goal has been met. Further, courts have held that a viable rehabilitative plan must be presented at the time the request for rehabilitative alimony is made. Since rehabilitative alimony is a projection based upon assumptions and probabilities, the plan must be in writing in the event the plan or goal is not achieved.
Id. at 683 (internal citations omitted). See Calderon v. Calderon, 730 So.2d 400, 402 (Fla. 5th DCA 1999). However, we have also recognized that a rehabilitative plan may be orally presented. See Beasley v. Beasley, 717 So.2d 208, 209 (Fla. 5th DCA 1998) (finding it was error to award rehabilitative alimony where wife did not present written or oral rehabilitative plan); see also Bryan v. Bryan, 765 So.2d 829 (Fla. 1st DCA 2000) (same).
An award of rehabilitative alimony should not turn on whether the rehabilitative plan is oral or written. Instead, such an award must be based on whether an adequate and credible rehabilitative plan is presented to the court, assuming that the requesting party also demonstrates his or her need and the other party's ability to pay. See, e.g., Bryan; Calderon; Beasley; Fullerton. In the instant case, while no written rehabilitative plan was presented, the former wife did present an adequate rehabilitative plan at the final hearing through her testimony and the testimony of her witnesses. See Kalmanson v. Kalmanson, 796 So.2d 1249, 1250 (Fla. 5th DCA 2001) (stating that to establish entitlement to rehabilitative alimony, the spouse must present evidence establishing the rehabilitative plan, the objective of the rehabilitation, the areas in which rehabilitation was desired, and the actual amount of rehabilitative alimony necessary). The plan, if accepted by the court, could easily be incorporated into the final judgment or memorialized in a transcript filed with the court, providing the written record necessary for the court to determine if the projections and assumptions made in the plan have come to fruition.
Our review of the Amended Final Judgment and the trial court's Memorandum of Findings makes it clear that the trial court did not consider the oral rehabilitative plan that was presented at the dissolution hearing. On remand, the trial court should consider the evidence presented and fashion a rehabilitative award for the former wife, if one is justified by the evidence, or deny rehabilitative alimony, and make specific findings in that regard.

*300 THE LIFE INSURANCE POLICY

On cross-appeal, the former husband asserts that the trial court erred by ordering him to maintain a $500,000 life insurance policy naming the former wife as the designated "beneficiary." "To the extent necessary to protect an award of child support, the court may order the obligor to purchase or maintain a life insurance policy or a bond, or to otherwise secure the child support award with any other assets which may be suitable for that purpose." § 61.13(1)(c), Fla. Stat. (1998). As the statute requires, the circumstances must suggest a necessity for such protection, and, thus, the trial court should make appropriate findings regarding the necessity for insurance protection. Guerin v. DiRoma, 819 So.2d 968, 970 (Fla. 4th DCA 2002). In the instant case, the trial court failed to make any findings necessary to justify requiring the former husband to maintain his pre-existing life insurance policy. In Sobelman v. Sobelman, 541 So.2d 1153, 1154-55 (Fla.1989), the supreme court held that section 61.08(3) permits the trial court to order an obligated spouse to purchase life insurance or other security to satisfy arrearages or to otherwise protect the receiving spouse in appropriate circumstances. See Richardson v. Richardson, 722 So.2d 280, 281 (Fla. 5th DCA 1998). On remand, the trial court must find whether appropriate circumstances exist to justify that the former husband maintain life insurance.[2]
If on remand the trial court finds the existence of circumstances justifying the requirement to maintain life insurance, the former wife should not be named as the beneficiary of the policy. The wife has no protectable interest except as the obligee of child support payments. It should be made clear that the policy is for the benefit of the children and no one else.

CHILD CARE AND CHILD CONTACT PROVISIONS
The former wife argues that the trial court failed to take into consideration the cost of the children's after school care. The former husband argues that it was within the trial court's discretion to refuse to include such costs where it was uncontroverted that the former wife was unemployed. We are unable to determine from the record before us whether the trial court considered day-care expenses. Section 61.30(7), Florida Statutes (1998), requires that seventy-five percent of day care costs be added to the child support obligation where day care is necessary due to employment, job search, and education. Here, because there were no findings in the final judgment regarding child-care expenses, we cannot meaningfully review this issue. On remand, the trial court shall determine the amount and necessity of *301 child-care expenses and include that sum, if any, as required by section 61.30(7).
Finally, the former wife contends that the trial court referenced, but failed to include, a contact schedule in the final judgment. We agree. On remand, the court shall attach the appropriate contact schedule.

CONCLUSION
Finding no merit in the remaining issues raised by the parties, we affirm the final judgment in part, reverse in part, and remand for further proceedings.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
GRIFFIN, J., concurs.
SHARP, W., J., concurs in part, dissents in part, with opinion.
SHARP, W., J., concurring in part and dissenting in part.
I concur with the majority's conclusion that this case needs to be remanded on the issues specified in the opinion, but I think the trial court should also reconsider its denial of permanent, periodic alimony in light of the facts and findings made by the judge.
This was a medium-term (gray area) marriage, lasting a little over seven years at the time the parties separated in 1998. Two children were born to the parties: Jessica (in April of 1991) and Sabrina (in April of 1993). Both children need special care, which the wife has been providing. Jessica has learning disabilities and attends a special school. She has childhood depression, attention deficit disorder, adjustment disorder and an auditory processing disorder. The younger child, Sabrina, is also a special needs child who has a low I.Q. Although she does not need as much attention as Jessica, she too requires extra help outside school.
In addition, the record established that the then 44 year-old wife has a myriad of health problems. Her doctor, Dr. Ruiz, testified she has Hepatitis C, which was diagnosed in 1987. In fact, the record indicates that she was working part-time[1] because of this illness at the time she met the husband. He claims that he did not know of this illness when they married, and that he would not have married her had he known. But the record shows that he conceded he knew about the illness during the wife's first pregnancy when he reviewed her medical records.
In addition, Dr. Ruiz testified that the wife also has Cytomegalovirus (CMV); Epstein-Barr; and Chronic Fatigue Syndrome (CFS). The symptoms of Hepatitis C are loss of energy and appetite, and weakness. Ultimately her liver will fail and death will result. Together, the symptoms of CMV, Epstein-Barr, and CFS are fatigue, muscle weakness, achiness, arthritis, pain in the joints, difficulties with concentration, memory, irritability and confusion. Undoubtedly, these combined illnesses with similar symptoms magnify the effect on the wife's health and her ability to be employed.
The trial court believed Dr. Ruiz when he testified that the wife had Hepatitis C, although it was not causing her medical problems at that time. The judge decided that because this was a "pre-existing condition," and the husband said he would not have married her if he had known about it, the court could not consider this illness in awarding alimony or making an equitable *302 distribution. This, in my view, is an outrageous principle of law without precedent or justification absent extreme evidence of misrepresentation or deceit, which does not exist in this case. Spouses do not come with special warranties. Do the vows "in sickness and in health" mean only "after-marriage acquired illnesses," like medical insurance policies? Certainly not.
Also unacceptable, in my view, was the court's view of Dr. Ruiz' testimony regarding the health effects of CMV, Epstein-Barr and CFS, which appear to have been diagnosed during the marriage. The court said it did not believe Dr. Ruiz' testimony on this point because the former wife exercised, took care of the children, did household chores, and had had a relationship with a boyfriend. However, the former husband presented no evidence the former wife did not suffer from these conditions, nor did he challenge that testimony.
The trial court denied the wife alimony of any kind based on the short-term duration of the marriage, and the fact that the wife had Hepatitis C when the parties married. The court found that the wife could earn the sum of $17,000 per year by working full time, and imputed that amount to her. The court also found that the husband's income earned as a cardiologist and one-third owner of a cardiology professional association had decreased for the previous two years to only $250,000 per annum. However, there was evidence that his average gross income was $375,583.50. After the court imputed income to the wife, the husband's net income was $12,951 per month, while the wife's was only $1,142.
Even if the wife could earn $17,000 per year working full time, it seems disingenuous to say that the husband should not be responsible for at least part of the wife's support, because one of her illnesses was diagnosed prior to the marriage and because the court refused to give weight to the fact she now suffers serious chronic illness post-marriage. This is particularly egregious under the circumstances of this case, since the trial court has also denied her an award for child care. Further, the record shows without dispute, the former wife has no current employment, her prior job skills are out-dated, and in order to gain employability she needs remedial pre-college courses, including English. The contrast between the parties' financial situations is gross.
The judgment in this case conflicts with our recent decision in Reeves v. Reeves, 821 So.2d 333 (Fla. 5th DCA 2002), which involved a short term marriage of four and one-half years. The 32-year-old wife, who had been a school teacher, was in good health, and the trial court did not award her permanent alimony. Nevertheless, we reversed the denial of permanent alimony.
We noted that there is a presumption, only,[2] against awarding permanent alimony in short-term marriages, but that presumption is rebuttable. Reeves; Hill v. Hooten, 776 So.2d 1004 (Fla. 5th DCA 2001). Permanent alimony can be awarded in cases involving a short-term marriage where events have occurred during the marriage, which preclude a spouse from earning as much as he or she did prior to the marriage. See generally, Adinolfe v. Adinolfe, 718 So.2d 369 (Fla. 4th DCA 1998). Similarly, where the parties agree that the wife would discontinue her career to provide care for a handicapped child, permanent alimony should be awarded. Reeves.
*303 The facts of this care more strongly support an award of permanent alimony than those in Reeves. This was not a short-term marriage. Seven plus years falls into the "grey" area where there is no presumption for or against alimony awards. See Escudero v. Escudero, 739 So.2d 688 (Fla. 5th DCA 1999) (nine-year marriage falls into gray area); Bailey v. Bailey, 617 So.2d 815 (Fla. 2d DCA 1993) (eight-year marriage falls into gray area). See also Kellerman v. Kellerman, 659 So.2d 1390 (Fla. 3d DCA 1995) (less than seven-year marriage is a short term marriage). The former wife in Reeves enjoyed good health. The former wife in this case suffers from numerous serious medical conditions. Further, care of the two special needs children will necessarily interfere with her ability to hold down part-time employment, much less full time employment, or to seek current re-training which is essential for any kind of adequate paying job. Considering these combination of factors, it seems extremely unlikely that the wife will ever be able to return to full-time employment. And, even if she does, it is abundantly clear she will never be able to approach the standard of living enjoyed by the parties during the marriage. That is the appropriate standard to evaluate the wife's needs for alimony purposes. See, e.g., Mallard v. Mallard, 771 So.2d 1138, 1139 (Fla.2000).
With regard to rehabilitative alimony, the purpose for such an award is to establish a spouse's capacity for self-support, either through re-development of previous skills or by providing training necessary to develop new work skills. Kuvin v. Kuvin, 442 So.2d 203 (Fla.1983). When a trial court awards rehabilitative, as opposed to permanent alimony, "it is a reflection of the court's optimism concerning the likelihood of future rehabilitation." Kuvin at 204. In determining that the former wife has the ability to rehabilitate herself without any source of income, the trial judge appears to be a superb optimist, reminiscent of Dr. Pangloss in Voltaire's Candide.
Although the trial judge has wide discretion in these cases, it is not unlimited. In discussing an appellate court's obligation in abuse of discretion cases, we said in Parce v. Byrd, 533 So.2d 812, 814 (Fla. 5th DCA 1988):
We must take care to avoid a mechanical application of the abuse of discretion test to shrink from reviewing the incorrect application of clear legal standards or the application of the wrong standardall in the name of deferring to the superior vantage point of the trial judge. To do so is to have the rule absorb the whole of judicial review-to have the branch assimilate the tree.
On remand, I think the trial judge should review first, the proper valuation and equitable distribution of marital assets. Then if it is apparent that the former wife will not receive sufficient assets to support herself, lacks the ability to work to support herself in the manner established during the marriage, and the former husband can financially afford to assist her (as was unquestionably established in this case), then the trial court should award permanent alimony or perhaps a combination of both permanent and rehabilitative alimony. To fail to do so in this case constitutes, in my view, a gross abuse of discretion. Hamlet v. Hamlet, 583 So.2d 654 (Fla.1991).
NOTES
[1] Slovan explained that New Directions is a program which aids single parents, displaced homemakers, and pregnant single teens to re-enter the educational process. It encompasses an eight-week career counseling course in order to assist the participants in finding direction in their educational goals. It also supports the participants financially, if needed, with child care, and provides emotional support as they go through the educational process.
[2] There is some discrepancy among the district courts of appeal as to the correct standard applicable in determining whether a spouse should be ordered to purchase or maintain life insurance. Florida courts, including this court, have ruled that in the absence of special circumstances, a spouse cannot be required to maintain life insurance for the purposes of securing support obligations. See, e.g., Cozier v. Cozier, 819 So.2d 834, 836 (Fla. 2d DCA 2002); Pinion v. Pinion, 818 So.2d 557 (Fla. 2d DCA 2002); Baker v. Baker, 763 So.2d 493 (Fla. 4th DCA 2000); McDaniel v. McDaniel, 653 So.2d 1076, 1078 (Fla. 5th DCA 1995); Mitchell v. Mitchell, 477 So.2d 2, 3 (Fla. 5th DCA 1985) ("[T]here is nothing in the law that requires [a spouse] to maintain insurance unless special circumstances dictate its advisability."). However, the supreme court in Sobelman v. Sobelman, 541 So.2d 1153 (Fla.1989), and this court in Richardson v. Richardson, 722 So.2d 280, 281 (Fla. 5th DCA 1998), have applied the "appropriateness" standard. Accordingly, that standard will be applied.
[1] The evidence indicated that she would have earned approximately $40,000 if she was working full-time.
[2] The duration of the marriage is but one factor to be considered in determining whether an award of permanent alimony is appropriate. See § 61.08; Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).