MONACO, J.
 

 The former husband, the appellant, W. Kenneth Lovell, seeks review of the final judgment of dissolution of marriage from his former wife, the appellee, Heidi M. Lovell, with respect to child custody and visitation, rehabilitative alimony, attorney’s fees, and other determinations by the trial court. As we agree, at least to some extent, with the former husband’s position regarding several of these grounds, we reverse in part, remand certain issues for additional consideration, and affirm the remainder of the final judgment.
 

 The parties were married for thirteen years when they separated, at which time the former husband petitioned for dissolution. The former husband is a well-paid executive with the PGA Golf Tour, while the former wife is a school teacher whose primary occupation prior to the separation was as a mother and homemaker. There were two children born of the marriage, a son who is now 14, and a daughter who is now 12. The former wife and children have relocated to the State of Utah where the former wife has returned to her teaching career.
 

 The dissolution process appears to have been highly charged emotionally, primarily because the former husband admitted that he had developed a relationship with a close friend of the family and fellow church member. Religion and church membership are particularly important to the parties and them children. Subsequent to the dissolution, the former husband married the person who the trial court referred to as the “paramour.”
 

 At the conclusion of the trial the court, with the acquiescence of the former husband, awarded the primary residential responsibility for the children in Utah to the former wife, and granted visitation to the former husband in accordance with local guidelines, but with some provisos that have proven to be troublesome. In addition, the former vafe was awarded rehabilitative alimony in the amount of $4,000 per month for a period of eight years, along with guidelines child support. Finally, the court also awarded attorney’s fees to the former wife. With this as a factual backdrop, we now deal with the legal issues raised by the parties.
 

 I. Child Visitation Issues.
 

 A. Limitation on Visitation In Presence of'Neiv Wife.
 

 The former husband does not challenge the trial court’s decision to award full residential custody of the children to the former wife. He does, however, appeal the order of the trial court forbidding his current wife from being in the presence of the children during visitation. More specifically, the final judgment (with proper names deleted) provides that:
 

 The Husband shall not expose the minor children to his paramour ... until such time as the minor children’s therapist ... deems it appropriate.
 

 There are two serious flaws with this ruling. First, it is not supported by evidence or findings that would warrant the requirement to sequester the children from the current wife; and second, the court seems to have delegated an important part of the visitation regime to a third party.
 

 It is clear from the testimony that the children do not like the their father’s new
 
 *1114
 
 wife, and that they blame her for the breakup of the family. There is testimony, in fact, that they refer to her as “Satan’s Wife.” The former husband, on the other hand, is very distressed by the fact that his children do not wish to talk to his new wife, nor be with her in the same room. Thus, emotions on this issue have been ratcheted to a high degree. More importantly, the children now live in Utah, while the former husband still lives in Florida and is now married to the woman they despise. When the children come to Florida for visitation, however, they are going to be staying in the former husband’s residence, which, inconveniently, is also the residence of his current wife. One can easily appreciate the difficulties this situation presents.
 

 Still, when the testimony is examined, there is scant evidence that being in the presence of the new wife is detrimental to the welfare of the children. There is no evidence that the female child suffered any ill effects by being exposed to the new wife, and the only negative manifestation demonstrated by the male child is that he lost a few pounds of weight. The experts testifying on behalf of each of the parties noted, on the other hand, that the new wife had never harmed the children, and that the young man’s weight loss stemmed either from a severe case of parental alienation (in the view of one expert), or from “anxiety related issues” (in the view of the other). One of the experts testified that:
 

 They’ve not felt love because that’s being victimized by parental alienation. They’re caught between God, this game I’m in with my mother is crazy but I got to do it or I’ll be abandoned. It’s madness what’s going on in this family.
 

 The former wife’s expert — the person to whom the trial court delegated the responsibility of determining when the children could be exposed to the new wife — testified that she saw no parental alienation being practiced by the former wife. She said, instead that “from the depths of their heart, [the children] don’t want to be around [new wife].”
 

 We review a trial court’s decision to restrict or limit visitation by an abuse of discretion standard.
 
 Allen v. Allen,
 
 787 So.2d 215 (Fla. 5th DCA 2001). There must, however, be competent, substantial evidence that such a restriction or limitation is in the best interests of the children in order for it to be sustained.
 
 Miller v. Miller)
 
 423 So.2d 638 (Fla. 4th DCA 1982). In
 
 Miller,
 
 our sister court succinctly held that because restrictions such as the one imposed in the present case “impact upon the private life of the custodial parent, they will be sustained only if the record contains competent substantial evidence to demonstrate that they are required to safeguard the best interests of the child.”
 
 Id.
 
 at 639-40.
 
 See also, Trylko v. Trylko,
 
 392 So.2d 1034, 1035 (Fla. 2d DCA 1981). That logic applies here, as well.
 

 In the present case the record is devoid of evidence demonstrating that exposure to the former husband’s new wife is detrimental to the best interests of the children, nor does the record contain findings in the final judgment to that effect. For this reason alone, that portion of the final judgment requiring the sequestration of the new wife from the children must be reversed. Additionally, reversal is required because the trial court cannot delegate its authority to another person to rule on the visitation details. There is no legal basis for allowing the children’s therapist to make the final call on when the new wife can be allowed to be in the presence of the children. This determination is solely within the province of a court of law.
 

 
 *1115
 

 B. Ambiguity With Respect To Summer Visitation.
 

 The former husband contends that the trial court erred in not giving him the Seventh Circuit’s guidelines summer visitation period in long distance visitation cases. While we do not conclude that the trial court erred in its division of the summer visitation period, we do find that the award is ambiguous and in need of clarification.
 

 The former husband was awarded “one-half of the children’s summer break, beginning at 5:00 p.m. on the second Friday after the end of the school year until 5:00 p.m. on the sixth Sunday after the end of the school year.” We note initially that the final judgment in this regard mirrors the language of the visitation guidelines found in the local rules for the Seventh Circuit. Nonetheless, the former husband argues that the language used in the judgment did not comport with the goal of the guidelines of awarding the non-custodial parent half of the children’s summer vacation because the award in time specific does not amount to half of the vacation period of the children.
 

 Although we observe that the trial court is not bound by the visitation guidelines, as the guidelines themselves specifically provide, it appears that the trial court may have been attempting to adopt them in crafting the final judgment. Because it is uncertain from the final order whether the trial court intended to award to the former husband half of the summer vacation or four weeks of the vacation, either one of which would be reasonable under the circumstances, we remand to the trial court for clarification.
 

 II. Propriety of Rehabilitative Alimony.
 

 The former husband contends that the rehabilitative alimony awarded by the trial court to the former wife is not supported by a rehabilitative plan as required by law. The trial court awarded the former wife rehabilitative alimony in the amount of $4,000 per month for eight years. The award was supported, in part, by the following findings contained in the final judgment:
 

 5. The time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment: The Husband is gainfully employed and has maintained his present employment for slightly over seven years. Although the Wife is employed as a school teacher, she just commenced her gainful employment on a full time basis. The Wife desires to return to school and pursue at least a master’s degree, which will place her at the same educational level as the Husband. In order for the Wife to obtain a master’s degree, she will need 45 credit hours at the rate of $270.00 per credit hour. In order for Wife to obtain her doctorate degree, she will be required to take an additional 70 credit hours at $270.00 per credit hour. Since the Wife is required to be employed, and since she is the primary caretaker of the minor children, it will take the Wife approximately six to ten years to complete her educational plan.
 

 The principal purpose of awarding rehabilitative alimony is to provide funds to the requesting spouse so he or she can establish the capacity for self-support, either through the redevelopment of previous skills or the provision of the training necessary to develop potential supportive skills.
 
 Hill v. Hooten,
 
 776 So.2d 1004, 1006 (Fla. 5th DCA 2001). Rehabilitative alimony, however, cannot be awarded absent a rehabilitative plan.
 
 Id.
 
 (citing
 
 Fullerton v. Fullerton,
 
 709 So.2d 162, 164 (Fla. 5th DCA 1998)). The spouse
 
 *1116
 
 seeking the award must present evidence establishing the objective of the rehabilitation, the areas in which rehabilitation is desired, and the amount of rehabilitative alimony necessary.
 
 Rowl v. Rowl,
 
 864 So.2d 1236, 1239 (Fla. 5th DCA 2004) (citing Ka
 
 lmanson v. Kalmanson,
 
 796 So.2d 1249, 1250 (Fla. 5th DCA 2001)). Although the plan does not have to be in writing, an adequate and credible rehabilitative plan must be presented to the court.
 
 Layeni v. Layeni,
 
 843 So.2d 295, 299 (Fla. 5th DCA 2003). In addition, the record must contain evidence of the need of the requesting spouse for such alimony, and a determination by the court that the other spouse has the ability to pay the amount awarded.
 
 Id.
 
 Finally, the trial court must make explicit the basis for the amount and duration of the award.
 
 Saporito v. Saporito,
 
 831 So.2d 697, 701 (Fla. 5th DCA 2002).
 

 In order to improve her employment status, former wife requested rehabilitative alimony because she planned to acquire a master’s degree in education. She argues that achieving that degree would put her at the same educational level as the former husband. She suggested, as well, that she would also like to acquire a doctorate in education because achieving the terminal degree in her field would allow for her to be employed as a principal of a school. She testified that the cost of this additional education would be approximately $30,000. She related that each credit hour costs $270, and that it would take 45 credits for her to earn a master’s degree, and an additional 70 credits for a doctorate degree. In her opinion these degrees would improve her ability to increase her salary significantly. Her plan was to work full time while attending classes on a part time basis. At the time of the trial, however, she had not made an application to any graduate school and had not yet even taken the graduate record examination.
 

 In the present case the orally presented plan is sparce on details, but rich in aspiration. For example, there was no testimony or other evidence to show how much the foregoing degrees would increase her salary, or how much it would cost per year for her to reach her goal. Moreover, the award for eight years is based on a great deal of speculation. Candidly, however, it is logical that a master’s degree and a doctorate would increase the former wife’s income, as they would enhance her existing education in the field in which she currently works, and we thus agree with the trial court that rehabilitative alimony is appropriate. On the other hand the plan unquestionably needs to be fleshed out. We, therefore, affirm an award of rehabilitative alimony, but not the amount or time period for which it should be awarded. We remand to the trial court to revisit these unresolved issues after a new evidentiary hearing. While we certainly do not require it, this might be an instance where rehabilitative alimony should be tied to time-performance standards, such as taking the graduate record exam, gaining entrance into graduate school, and obtaining the master’s degree within specific outside time limits.
 

 III. Propriety of an Award of Attorney
 
 ’,s
 
 Fees.
 

 The final judgment requires the former husband to pay $28,906.42 to the former wife for attorney’s fees. The standard for awarding attorney’s fees in dissolution cases remains the financial need of the requesting party factored with the financial ability of the other party to pay.
 
 Price v. Price,
 
 951 So.2d 55, 59 (Fla.
 
 *1117
 
 5th DCA 2007)
 
 [1]
 
 (quoting
 
 Derrevere v. Derrevere,
 
 899 So.2d 1152, 1153 (Fla. 4th DCA 2005) (citations omitted)). The purpose of section 61.16, Florida Statutes, which governs the award of attorney’s fees in dissolution cases, is to ensure that both parties will have a similar ability to secure competent legal counsel.
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197, 1205 (Fla.1980). For this reason the most important factor in awarding attorney’s fees is the financial resources of each party.
 
 Rosen v. Rosen,
 
 696 So.2d 697, 700 (Fla.1997).
 

 One spouse does not have to “be completely unable to pay attorney’s fees in order for the trial court to require the other spouse to pay [them].”
 
 Canakaris,
 
 382 So.2d at 1205. On the other hand, this court has noted that attorney’s fees should not be awarded when the spouse has “received assets via equitable distribution or alimony, or has another income source with which to pay the attorney fees without diminishing the party’s standard of living or depleting that party’s assets.”
 
 Kelly v. Kelly,
 
 925 So.2d 364, 368 (Fla. 5th DCA 2006). The trial court should make its determination regarding attorney’s fees “after the dissolution proceeding has concluded, based upon the financial situation in which it has left the parties.”
 
 Id.
 
 (citing
 
 Driscoll v. Driscoll,
 
 763 So.2d 1189 (Fla. 4th DCA 2000)).
 

 Here, the former -wife has received sufficient assets as a result of the dissolution so that it cannot be said that there is a requirement for the former husband to pay this part of the former wife’s attorney’s fees. Given the asset distribution, it is clear that both parties had a similar ability to secure competent legal counsel (and, parenthetically, did so). Accordingly, we conclude that the trial court abused its discretion in the award of $28,906.42 in fees to the former wife, and reverse in that respect.
 
 See (Stern v. Chovnick,
 
 914 So.2d 524 (Fla. 4th DCA 2005);
 
 Ondrejack v. Ondrejack,
 
 839 So.2d 867, 872 (Fla. 4th DCA 2003)).
 

 IV. Conclusion.
 

 While the former husband has sought relief with respect to other aspects of the final judgment, we find no merit in any of these positions. Accordingly, we reverse the final judgment of dissolution of marriage with regard to the limitation on visitation of the children of this marriage with the former husband which requires him not to expose the children to his current wife, and with respect to the award of attorney’s fees. We also reverse the award of rehabilitative alimony, and remand for a new evidentiary hearing on amount and length of the award. Finally, we remand for clarification with respect to the extent of summer visitation. Otherwise, we affirm.
 

 AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
 

 COHEN, J., and PLEUS, JR., R., Senior Judge, concur.
 

 [1]
 

 . This court reversed the trial court's order requiring husband to pay wife's attorney's fees because husband would be “in no bettcr position to pay [wife's] attorney's fees than she [would] be in after the divorce.”