TAYLOR, J.
This appeal arises from the tragic death of 14-year-old Eric T. Brown, Jr., who drowned while trying to save his 15-year-old friend, who was caught in an ocean rip current off South Beach Park in Vero Beach, Florida. Eric’s parents, as the personal representatives of his estate, brought a wrongful death action against the City of Vero Beach (‘Vero Beach”) and the Indian River County Board of County Commissioners (“Indian River”), alleging that they breached their duty to warn the public of dangerous conditions in the ocean. Because the trial court correctly determined that section 380.276, Florida Statutes (2005), precludes the plaintiffs’ cause of action against the defendants, we affirm the trial court’s dismissal of their complaint with prejudice.
The plaintiffs filed an amended complaint against Vero Beach and Indian River, alleging that the defendants co-owned South Beach Park and held the park “out to the public as a swimming area or led the public to believe the area was a designated swimming area.” The complaint further alleged:
On or about October 7, 2007, Decedent, ERIC T. BROWN, JR., entered South Beach Park along with some friends. At approximately 4:00 p.m. that afternoon, the decedent, ERIC T. BROWN, JR., entered the water to assist a female friend when he disappeared under large waves at an unguarded area of the beach. Unbeknownst to the decedent, *174 ERIC T. BROWN, JR., a condition existed in the ocean known as a “rip current” which dragged the decedent’s body from the shore and caused him to drown. The decedent’s body has never been recovered.
The complaint alleged negligence against both Vero Beach and Indian River, asserting that: (1) they had a duty of care to warn the public of any dangerous conditions of which they knew or should have known; (2) they breached their duty of care by failing to warn both the public and Eric that rip currents existed or were possible based on the conditions being favorable for rip currents; (8) this hazardous and dangerous condition was known to Vero Beach and Indian River or it had existed for a sufficient length of time that they reasonably should have known of the hazardous and dangerous condition; and (4) that as a result of Vero Beach’s and Indian River’s negligence, the survivors suffered losses.
Vero Beach and Indian River filed motions to dismiss the amended complaint. They argued that the plaintiffs’ cause of action was barred by section 380.276(6), Florida Statutes, which exempted local government entities from liability for any injury or loss of life caused by changing surf and other naturally occurring conditions along coastal areas.[1] The trial court agreed and dismissed the amended complaint with prejudice.
“Because a ruling on a motion to dismiss for failure to state a cause of action is an issue of law, it is reviewable on appeal under the de novo standard of review.” Regis Ins. Co. v. Miami Mgmt., Inc., 902 So.2d 966, 968 (Fla. 4th DCA 2005) (citing Bell v. Indian River Mem’l Hosp., 778 So.2d 1030, 1032 (Fla. 4th DCA 2001)). Further, where the question involves interpretation of a statute, it is subject to de novo review. Tasker v. State, 48 So.3d 798, 804 (Fla.2010).
This appeal concerns whether section 380.276(6), Florida Statutes (2007), creates a limitation on the liability of local governments for death and injuries resulting from rip currents. As with the interpretation of any statute, the starting point of analysis is the actual language of the statute. Cont’l Cas. Co. v. Ryan Inc. E., 974 So.2d 368, 374 (Fla.2008). “When a statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” Lee Cnty. Electric Coop., Inc. v. Jacobs, 820 So.2d 297, 303 (Fla.2002) (citations omitted). If the statute is clear and unambiguous, it is given its plain and obvious meaning without resorting to the rules of statutory construction and interpretation, unless this would lead to an unreasonable result or a result clearly contrary to legislative intent. Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005). Florida courts are “ “without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.’ ” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)) (emphasis in original).
Section 380.276 was created in 2002 and amended in 2005 to add subsection (6), with a July 1, 2005 effective date. Section 380.276(6), Florida Statutes (2005), provides as follows:
*175 Due to the inherent danger of constantly changing surf and other naturally occurring conditions along Florida’s coast, the state, state agencies, local and regional government entities or authorities, and their individual employees and agents, shall not be held liable for any injury or loss of life caused by changing surf and other naturally occurring conditions along coastal areas, whether or not uniform warning and safety flags or notification signs developed by the department are displayed or posted.
The language of this subsection is clear and unambiguous, such that the plain meaning should be used to determine legislative intent. This subsection begins by acknowledging the legislature’s awareness that Florida’s coast is subjected to constantly changing surf and other naturally occurring conditions that constitute an inherent danger in the coastal areas of the state. Because of this inherent danger, the statute protects government entities and their employees and agents from liability for injuries or death caused by changing surf or any other naturally occurring conditions along Florida’s coastal areas. This protection from liability is given to government entities regardless of whether or not there are warning flags or notification signs displayed. Thus, on its face, the statute clearly and unambiguously shows the legislature’s intent to limit the statutory waiver of sovereign immunity it created in section 768.28, Florida Statutes.
The plaintiffs argue that the statute is ambiguous, given the overall legislative plan, as expressed it the statute’s title, “Beaches and coastal areas; display of uniform warning and safety flags at public beaches; placement of uniform notification signs; beach safety education.” The plaintiffs contend that the legislative history of section 380.276 shows a desire to have all of Florida’s beaches and coastal areas adopt a uniform notification system for warning and safety flags. They point out that nowhere in the chapter title is there a reference to governmental immunity, and that the first five sections of 380.276 address only the development of a program for uniform warning and safety flags at public beaches.[2] The plaintiffs further ar *176 gue that section (6) makes no mention of the legislature’s intent to eliminate a common law cause of action against local governments for any negligence resulting in injury or loss of life caused by changing surf or other naturally conditions along the coast, so long as the claim is not predicated on the failure to use state-approved warning flags or signs.
However, as discussed above, because the language of section 380.276(6) is clear and unambiguous, its plain and ordinary meaning controls; we cannot resort to legislative history or other rules of statutory construction to discern its meaning. In short, the subsection provides that government entities may not be held liable for death or injury due to changes in surf or other naturally occurring conditions along the coast, whether or not warnings were displayed.
The plaintiffs argue that the government is responsible for dangerous conditions on its property, regardless of whether it is a naturally occurring condition. Relying on Breaux v. City of Miami Beach, 899 So.2d 1059 (Fla.2005), the plaintiffs argue that a governmental entity has an operational level duty to maintain a safe premises and a duty of reasonable care, just like a private individual, to make those premises safe or to warn of problems that may occur on their premises. In Breaux, on February 20, 1997, a woman was swimming off the coast of Miami Beach when she got caught in a rip current. Id. at 1062. Hearing her cries for help, Mr. Breaux attempted to save her, but both were overcome by the current and drowned. Id. Wrongful death actions were brought against multiple defendants. Id. All the complaints were dismissed with prejudice except as to the City of Miami Beach. Id. Those complaints alleged the City was negligent in failing to warn swimmers of rip-current dangers, even though it knew the area was used for swimming. Id. The trial court granted the City’s summary judgment motion, finding the City was immune from suit. Id. at 1068. The Third District affirmed, not on the issue of sovereign immunity, but instead of the lack of the City’s duty to warn the decedents of rip currents. Id. Because this decision conflicted with the Florida Supreme Court’s 2000 decision in Florida Department of Natural Resources v. Garcia, 753 So.2d 72 (Fla.2000), the supreme court accepted jurisdiction. Id.
In Breaux, the supreme court explained that “ ‘[a] government unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question. However, once the unit decides to operate the swimming facility, it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances.’ This duty includes ‘keeping] the premises in a reasonably safe condition and ... warning] the public of any dangerous conditions of which [the government entity] knew or should have *177 known.’ ” Id. at 1064 (alterations in original) (citations omitted). Further, “[i]f ‘the governmental] entity held the area out to the public as a swimming area or led the public to believe the area was a designated swimming area,’ the governmental entity owes an operational-level duty of care to those using the swimming area.” Id. (citing Garcia, 753 So.2d at 76). The court concluded that the City was operating a “public swimming area” and that “[t]he City therefore had an operational-level duty of care ‘to warn the public of any dangerous conditions of which it knew or should have known.’ ” Id. at 1065 (citing Garcia, 753 So.2d at 75).
Breaux was issued on March 24, 2005. Section 380.276(6), however, became effective on July 1, 2005, after Breaux. The enactment of this subsection overrides the analysis in Bream. Additionally, the underlying events from Bream occurred in 1997, long before the original 2002 enactment of section 380.276 and the 2005 amendment adding subsection (6). Thus, the government entities involved in Bream did not have the benefit of subsection (6), and as such could not claim immunity for the occurrences in 1997.
The plaintiffs’ argument that section 380.276(6) abrogated a long-standing common law right to bring a negligence claim against the City of Vero Beach and Indian River County is without merit. Prior to 1776, the prevailing common law in Florida was the doctrine of sovereign immunity. Cauley v. City of Jacksonville, 403 So.2d 379, 385 (Fla.1981) (stating that “[tjhere was no statutory right to recover for a municipality’s negligence predating the adoption of the declaration of rights contained in the Florida constitution nor was there a cause of action at common law as of July 4, 1776, adopted under section 2.01, Florida Statutes”). With the enactment of section 768.28, Florida Statutes, there came a limited waiver of governmental sovereign immunity for municipalities. This change, as courts observed, brought with it fairness, equality, and consistency by providing instances in which municipalities would not be immune from suit. Id. It is within the legislature’s “discretion to place limits and conditions upon the scope of the sovereign immunity waiver.” Campbell v. City of Coral Springs, 538 So.2d 1373, 1375 (Fla. 4th DCA 1989). Such discretion was exercised by the legislature in enacting section 380.276(6).
Because the allegations of the amended complaint fall squarely under the statute’s provision for government immunity in the event of injury or death caused by the changing surf or other naturally occurring conditions along Florida’s coastal areas, we affirm the trial court’s order dismissing the amended complaint with prejudice.

Affirmed.

STEVENSON and GERBER, JJ., concur.

. The defendants also argued that the complaint did not specifically allege where the drowning occurred or that it occurred within the park; they alleged only that the decedent entered through South Beach Park.

. Section 380.276 Beaches and coastal areas; display of uniform warning and safety flags at public beaches; placement of uniform notification signs; beach safety education.-
(1) It is the intent of the Legislature that a cooperative effort among state agencies and local governments be undertaken to plan for and assist in the display of uniform warning and safety flags, and the placement of uniform notification signs that provide the meaning of such warning and safety flags, at public beaches along the coast of the state. Because the varying natural conditions of Florida’s public beaches and coastal areas pose significant risks to the safety of tourists and the general public, it is important to inform the public of the need to exercise caution.
(2) The Department of Environmental Protection, through the Florida Coastal Management Program, shall direct and coordinate the uniform warning and safety flag program. The purpose of the program shall be to encourage the display of uniform warning and safety flags at public beaches along the coast of the state and to encourage the placement of uniform notification signs that provide the meaning of such flags. Only warning and safety flags developed by the department shall be displayed. Participation in the program shall be open to any government having jurisdiction over a public beach along the coast, whether or not the beach has lifeguards.
(3)The Department of Environmental Protection shall develop a program for the display of uniform warning and safety flags at public beaches along the coast of the state and for the placement of uniform notification signs that provide the meaning of the flags displayed. Such a program shall provide:
(a) For posted notification of the meaning of each of the warning and safety flags at all designated public access points.
*176 (b) That uniform notification signs be posted in a conspicuous location and be clearly legible.
(c) A standard size, shape, color, and definition for each warning and safety flag.
(4) The Department of Environmental Protection is authorized, within the limits of appropriations or grants available to it for such purposes, to establish and operate a program to encourage the display of uniform warning and safety flags at public beaches along the coast of the state and to encourage the placement of uniform notification signs that provide the meaning of the flags displayed. The department shall coordinate the implementation of the uniform warning and safety flag program with local governing bodies and the Florida Beach Patrol Chiefs Association.
(5) The Department of Environmental Protection may adopt rules pursuant to ss. 120.536(1) and 120.54 necessary to administer this section.