NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PAOLA PEREZ,                                )
f/k/a PAOLA FAY,                            )
                                           )
            Appellant,                      )
                                           )
v.                                          )          Case No. 2D13-4217
                                           )
DERIK FAY,                                  )
                                           )
            Appellee.                       )
                                           )
_____)

Opinion filed January 23, 2015.

Appeal from the Circuit Court for Lee
County; Elisabeth Adams, Judge.

Robert L. Donald of Law Office of Robert L.
Donald, Fort Myers, for Appellant.

Robert J. Coleman of Coleman & Coleman,
Fort Myers, for Appellee.


VILLANTI, Judge.

            Paola Perez, the Mother, appeals the Amended Supplemental Final

Judgment entered on the amended supplemental petition for modification that was filed

by Derik Fay, the Father.  We affirm the trial court's decision to give the Father primary

residential custody of the parties' daughter as that decision is supported by competent,

substantial evidence.  However, due to legal errors in the remainder of the trial court's

rulings, we reverse the remaining provisions of the amended supplemental final judgment and remand for further proceedings.

**Facts**

The parties married in July 2003, and their daughter was born in 2006. Shortly after their daughter's birth, the parties separated. During the ensuing dissolution proceedings, the parties entered into a Marital Settlement Agreement that allowed for shared parental responsibility of their daughter. The parties agreed on a time-sharing schedule that had the daughter living with the Mother four days each week and with the Father the other three days, with the Mother having primary residential custody. The trial court incorporated these agreements into the final judgment of dissolution, and this arrangement apparently worked well for several years.

Then, in June 2010, the Mother began suffering from psychological problems that ultimately resulted in her involuntary commitment. When the Father learned that the Mother had been involuntarily committed, he filed an emergency petition seeking primary residential custody of their daughter and seeking to revoke the Mother's time-sharing. The trial court granted this motion ex parte, and the Father took over primary care of his daughter.

Approximately a week later, the Mother was released from involuntary commitment, and she filed a motion to vacate the ex parte order concerning custody and time-sharing with her daughter. The trial court held a hearing on this motion, which the Mother attended and at which she was represented by counsel. After hearing from both parties, the trial court denied the Mother's request to return primary residential custody of her daughter to her; however, it granted her supervised time-sharing twice

weekly for four hours at a time with a supervisor to be agreed upon by the parties. The court abated the Father's child support obligation but ordered him to bear the costs of the Mother's supervised time-sharing. The court further ordered that the Mother could have daily telephone contact with her daughter at a time to be coordinated with and supervised by the Father. And, because the Father did not speak the Mother's native language—Spanish—the court ordered the Mother to speak only English with her daughter during these daily telephone calls. Despite these drastic changes to the Mother's time-sharing and custody, the court did not set forth any guidelines in its order for how the Mother could restore her unsupervised time-sharing with or primary custody of her daughter.

The week after the court entered its order denying the Mother's motion to vacate the ex parte ruling, the Father filed a Supplemental Complaint for Modification, in which he alleged that the Mother's mental health issues constituted a substantial change in circumstances that warranted a permanent modification of the parties' final judgment of dissolution. He requested that the court order the parties to submit to a parenting evaluation, that the Mother be ordered to undergo psychiatric testing, and that the Mother be required to complete a parenting course. In her answer to the complaint, the Mother indicated that she did not object to undergoing either a parenting evaluation or psychiatric testing. However, she requested that the "emergency ex parte" order be vacated since the emergency upon which it was based had ended, and she requested that her time-sharing and parental responsibility be restored to that specified in the final judgment of dissolution.

Over the ensuing two and a half years, the Mother underwent parenting evaluations, psychiatric evaluations, and social investigations. During this time, the trial court granted the Father's "Emergency Motion to Suspend or Modify Time-Sharing" based on an incident during which the Mother allegedly "whisked" the child away from the time-sharing supervisor and had a "private" conversation with her in a public restroom. In granting this motion, the court reduced the Mother's time-sharing to ninety minutes twice a week.

Finally, in December 2012, the court held an evidentiary hearing on the Father's Amended Supplemental Complaint for Modification.[1] At that hearing, the Father again produced evidence about the Mother's 2010 mental health incident. He also offered evidence that the Mother had been convicted of two criminal offenses in 2010 and that she suffered from a mild form of bipolar disorder, for which she was not properly following her treatment protocol. He asked the court to make the provisions of the emergency order permanent and require the Mother to pay the cost of her supervised time-sharing.

In her case, the Mother admitted that she had had a series of problems during the summer of 2010. However, she produced uncontradicted evidence that there had been no further incidents. Her treating psychologists testified that the Mother was following her recommended treatment protocol. Both time-sharing supervisors testified that the Mother was very engaged with her daughter, that she brought appropriate games and activities to the time-sharing visits, and that the Mother and daughter had a

---

[1]The minor changes between the Father's original Supplemental Complaint for Modification and the later Amended Supplemental Complaint for Modification are irrelevant to our ruling.

- 4 -

strong bond. The parenting evaluator testified that the Mother should begin transitioning to increased supervised time-sharing, and the evaluator outlined a plan for this to occur over a six-month period.

Based on all of the evidence, the trial court found that there was a substantial and material change in circumstances that warranted making the Father the permanent primary residential parent for the parties' daughter. However, for no reason that can be gleaned from the record and with no factual findings in the order to support the change, the trial court reduced the Mother's supervised time-sharing from two to three hours per week to four hours per month and allowed the scheduling of the time-sharing to be at the sole discretion of the time-sharing supervisor. In addition, the court changed the responsibility for paying the time-sharing supervisor from the Father to the Mother. It also made the language restriction during the Mother's interactions with her daughter permanent. And, despite all of these changes to the Mother's time-sharing, the court provided no guidance whatsoever as to how the Mother could restore her former level of time-sharing or permanent residential custody. The Mother now appeals all of these rulings.

As an initial matter, we affirm the trial court's decision to leave primary residential custody of the parties' daughter with the Father. At the time of the original ex parte hearing, the Father presented substantial, competent evidence that there had been a material and substantial change in circumstances since the entry of the final judgment of dissolution and that an immediate change in custody would be in the best interests of the parties' daughter. The amended supplemental final judgment relied on those findings, as well as findings relating to the Mother's continued mental health

treatment, to continue primary residential custody of the daughter with the Father. Because that ruling is based on competent, substantial evidence, we affirm.

However, we must reverse the remainder of the amended supplemental final judgment and remand for further proceedings because the remaining portions of the judgment are legally deficient. We address the three broad areas covered by the amended supplemental final judgment in turn.

### Sole Parental Decision-Making

The Mother first contends that the trial court erred by altering the parties' shared parental responsibility so that the Father now has the authority to make final decisions on "all issues" concerning the parties' daughter. This portion of the amended supplemental final judgment must be reversed because it grants relief not requested by the Father.

> "In modification proceedings, as in other civil matters, courts are not authorized to award relief not requested in the pleadings. To grant unrequested relief is an abuse of discretion and reversible error." Abbott v. Abbott, 98 So. 3d 616, 617-18 (Fla. 2d DCA 2012) (citations omitted) (internal quotation marks omitted). Additionally, a court should not grant such relief absent proper notice to the parties. Sinton v. Sinton, 749 So. 2d 532, 533 (Fla. 2d DCA 1999).

Worthington v. Worthington, 123 So. 3d 1189, 1190-91 (Fla. 2d DCA 2013). Moreover, a court errs in granting relief on issues not tried with the consent of the parties. See Byers v. Callahan, 848 So. 2d 1180, 1184 (Fla. 2d DCA 2003).

In his Amended Supplemental Complaint for Modification, the Father did not request either sole parental responsibility or sole decision-making authority. He also did not request such relief at the evidentiary hearing. Nevertheless, the trial court sua sponte awarded the Father sole parental responsibility and sole decision-making

authority in the supplemental final judgment of modification. When the Mother received this judgment, she immediately filed a motion for rehearing raising her objection to this unrequested relief. The trial court granted the Mother's motion for rehearing to the extent that it "reinstated" shared parental decision-making, but it nevertheless ordered that the Father would be "the ultimate decision maker for all issues."

It is clear from the record that the Father did not raise the issue of a change in parental responsibility and decision-making responsibility in his pleadings, and the issue was not tried by consent. Therefore, the trial court abused its discretion in making any change to this portion of the original final judgment, and we must reverse. On remand, the trial court must reinstate shared parental responsibility and shared parental decision-making responsibility as to all issues.

**Language Restriction**

For the same reason, we must reverse the trial court's ruling that requires the Mother to speak only English to her daughter at all times. While there may have been some legal justification for limiting the Mother to English when the Father was supervising her time-sharing under the ex parte order, the Father did not ask for this restriction to be made permanent in his Amended Supplemental Complaint for Modification, and the issue was not tried by consent. In the absence of such a request or consent, the trial court had no authority to make this restriction permanent. See Worthington, 123 So. 3d at 1190-91 (holding that an order granting unrequested relief constitutes an abuse of discretion and is reversible error); Abbott v. Abbott, 98 So. 3d 616, 617-18 (Fla. 2d DCA 2012) (same).

Moreover, even if the Father had requested such a ruling in his pleadings, he presented no evidentiary basis to support it. The only possible basis for such a ruling was an ex parte letter sent by the time-sharing supervisor to the court requesting an order requiring the Mother to speak to her daughter only in English because the time-sharing supervisor did not speak Spanish and she needed "to know what is being said to [the child] at all times." The time-sharing supervisor did not explain why she believed that she needed to know everything the Mother said to her daughter or why it would be detrimental to the child to speak Spanish with her Mother. The Father also presented no evidence that speaking Spanish with the Mother would be detrimental to the child. Hence, there was simply no evidentiary basis for the trial court's ruling restricting the Mother's use of her native language even if such a restriction had been requested, and therefore the ruling constitutes an abuse of discretion.

In this appeal and at oral argument, the Father argues that this ruling was necessary to prevent the Mother from alienating the child from her Father by speaking Spanish, which the Father does not speak or understand. However, while the Father might like to sever his ties with the Mother, he has no right to sever his child's ties with either her Mother or the child's own Spanish heritage. The Mother spoke Spanish when the parties were married, and she spoke to the child in Spanish until the ex parte order forbade it. We can see no legal reason to continue this xenophobic language restriction at this point. If on remand the trial court can identify an evidentiary basis for a legitimate concern that the Mother may be saying inappropriate things to her daughter in Spanish, then the remedy would be for the court to ensure that the time-sharing supervisor

speaks and understands Spanish—not to prohibit the Mother from speaking her native language with her daughter.

## Time-Sharing

Finally, the Mother contends that the trial court abused its discretion by reducing her time-sharing with her daughter, by delegating the scheduling of her time-sharing to the time-sharing supervisor, by ordering her to pay the costs of the time-sharing supervisor, and by failing to set forth the steps that she must take to regain the time-sharing awarded her in the original final judgment. We must reverse all of these provisions.

The supreme court has recognized that a parent has a constitutionally protected " 'inherent right' to a meaningful relationship with his [or her] children." Schutz v. Schutz, 581 So. 2d 1290, 1293 (Fla. 1991). Thus, time-sharing privileges should not be denied to either parent as long as the parent conducts himself or herself, while in the presence of the children, in a manner which will not adversely affect the children. See Yandell v. Yandell, 39 So. 2d 554, 555 (Fla. 1949); Spano v. Bruce, 816 So. 2d 714, 715 (Fla. 3d DCA 2002); Booker v. Booker, 636 So. 2d 796, 801 (Fla. 1st DCA 1994); Baker v. Baker, 366 So. 2d 873, 873 (Fla. 4th DCA 1979). Because of the constitutional right to a meaningful parent-child relationship, there must be competent, substantial evidence in the record that demonstrates that any restrictions or limitations on time-sharing are in the best interests of the child before those restrictions will be sustained. See Lovell v. Lovell, 14 So. 3d 1111, 1114 (Fla. 5th DCA 2009); Miller v. Miller, 423 So. 2d 638, 639-40 (Fla. 4th DCA 1982).

Here, the Father presented no evidence that the Mother had conducted herself during her supervised time-sharing in any manner that would adversely affect the parties' daughter. Nevertheless, the trial court reduced the Mother's supervised time-sharing with her daughter from two to three hours per week to only four hours per month. This drastic reduction in the Mother's time-sharing, imposed without any evidentiary support, constitutes an abuse of discretion and must be reversed.

In addition, the trial court improperly delegated to the time-sharing supervisor the authority to schedule the Mother's time-sharing at the supervisor's sole discretion. The court also permitted the time-sharing supervisor to unilaterally suspend the Mother's visits if the time-sharing supervisor "has concerns" about the child's well-being. These rulings cannot stand. "[I]t is the trial court's responsibility to ensure that an appropriate relationship is maintained between a parent and his or her children, and that responsibility 'cannot be abdicated to any parent or expert.' " Grigsby v. Grigsby, 39 So. 3d 453, 457 (Fla. 2d DCA 2010) (quoting McAlister v. Shaver, 633 So. 2d 494, 496 (Fla. 5th DCA 1994)). Simply put, "the trial court cannot delegate its authority to another person to rule on the visitation details." Lovell, 14 So. 3d at 1114. The trial court must ensure that an appropriate relationship is maintained between the Mother and her daughter, and it cannot delegate its responsibility to set the visitation details to the person supervising the Mother's time-sharing. This delegation of authority from the court to the time-sharing supervisor constitutes an abuse of discretion that must be reversed.

Also troubling is the portion of the amended supplemental final judgment that requires the Mother to be solely responsible for the costs of her supervised time-

sharing, thus tying her visitation with her daughter to her financial status. As this court has stated, "[a] parent's visitation rights may not be conditioned on the payment of the parent's financial obligations." Hastings v. Rigsbee, 875 So. 2d 772, 777 (Fla. 2d DCA 2004). Instead, the expenses of visitation are part of the parties' childrearing expenses that must be addressed as part of the parties' child support obligations. Id.; see also Drakulich v. Drakulich, 705 So. 2d 665, 667 (Fla. 3d DCA 1998) (noting that the expenses of visitation are a childrearing expense "like any other").

Here, the amended supplemental final judgment implicitly conditions the Mother's time-sharing on her payment of the time-sharing supervisor by making her solely responsible for payment of the time-sharing supervisor's charges. While the Father contends that the judgment does not directly condition time-sharing on payment, we cannot help but note that the judgment gives the time-sharing supervisor the discretion to set the time-sharing schedule and to unilaterally suspend it. The reality of these two provisions is that the Mother's time-sharing with her daughter will simply not occur unless she pays the time-sharing supervisor. Therefore, this portion of the final judgment must also be reversed.

Finally, the amended supplemental final judgment is legally deficient on its face because it does not set forth what steps the Mother must take to regain primary residential custody and/or meaningful unsupervised time-sharing with her daughter. In this regard, the trial court's order is alarmingly like that we reversed in Grigsby. There, the trial court transferred custody of the parties' children from the mother to the father and halted all visitation between the mother and her children after the mother engaged in acts designed to alienate the children from their father. Grigsby, 39 So. 3d at 455-56.

While this court affirmed the trial court's decision to eliminate the mother's time-sharing with her children at that point in time, we held that when the court exercises its discretion to reduce or eliminate time-sharing with a parent's children,

> the court must give the parent the key to reconnecting with his or her children. An order that does not set forth the specific steps a parent must take to reestablish time-sharing, thus depriving the parent of that key, is deficient because it prevents the parent from knowing what is expected and prevents any successor judge from monitoring the parent's progress.

Id. at 457. We also held that the court had the obligation to identify "concrete steps" in the final judgment that the parent must take to reestablish time-sharing. Id.

Similarly in this case, after arbitrarily reducing the Mother's time-sharing by more than half, the trial court failed to identify any steps whatsoever that the Mother could take to reestablish even the weekly supervised time-sharing she had under the ex parte order, much less the steps she needed to take to reestablish unsupervised time-sharing or custody. And the error in this case is particularly egregious given that the doctor who performed the parenting evaluation—Dr. Sanders—included a proposed path to reestablishing meaningful time-sharing in her report to the court. The trial court's failure to identify these, or any other, steps the Mother needed to take to reestablish full time-sharing with her daughter constitutes reversible error.

The reversal of all of these provisions necessitates remand for further proceedings. On remand, the trial court must reinstate the amount of supervised time-sharing that the Mother enjoyed under the emergency ex parte order. It must set a time-sharing schedule that ensures that an appropriate and meaningful relationship is maintained and fostered between the Mother and her daughter. It must address the

costs of the time-sharing supervisor as part of the parties' respective child support obligations, taking additional evidence if necessary. And it must identify the specific steps the Mother must take to reestablish unsupervised time-sharing with and/or primary residential custody of her daughter.

### Conclusion

In sum, we affirm the amended supplemental final judgment only insofar as it gives the Father primary residential custody of the parties' daughter. We reverse the amended supplemental final judgment to the extent that it gives the Father ultimate decision-making authority for all issues relating to the parties' daughter, to the extent that it reduces the Mother's supervised time-sharing with her daughter, to the extent that it delegates the court's responsibility for setting a time-sharing schedule to the time-sharing supervisor, to the extent that it requires the Mother to pay the costs of her time-sharing, and to the extent that it prohibits the Mother from speaking Spanish with her daughter. And we remand for those further proceedings necessary to make the custody and time-sharing rulings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings.


KHOUZAM, J., Concurs.
WALLACE, J., Concurs with opinion.

WALLACE, Judge, Concurring.

I fully concur in Judge Villanti's thorough and well-reasoned majority opinion. I write separately to address the trial court's linguaphobic edict forbidding the Mother from speaking the Spanish language to her daughter.

The order under review provides, in pertinent part, as follows: "Under no circumstances shall the Mother speak Spanish to the child." Our record does not reflect the level of the child's fluency in Spanish. Presumably, the child's ability to speak the Mother's native tongue has deteriorated during the several years that the trial court's "NO SPANISH!" order has been in effect. But the Mother will violate the trial court's order by uttering even the most simple Spanish phrases to her daughter, such as *te quiero,*[2] *feliz cumpleaños,*[3] or *te extraño.*[4] The Mother is also prohibited from addressing her daughter with any Spanish terms of endearment, for example, *querida.*[5] There is no basis in the record for such a restriction. But the problems with the language restriction go beyond the lack of record support. The prohibition against speaking Spanish improperly tends to isolate the child from the Mother and her family and impermissibly violates the Mother's basic rights under the federal and Florida constitutions.

The Mother is a native of Venezuela. She speaks English fluently, but Spanish is her native tongue. The Father knew these facts about the Mother when he

---

[2]"I love you."

[3]"Happy birthday."

[4]"I miss you."

[5]"Dear" or "dear one."

married and had a child with her. The Father cannot be surprised or complain that the Mother may—from time to time—choose to speak with her daughter in Spanish. Most parents would be pleased to have their child acquire a second language. This should be particularly true for the Spanish language in Florida, where approximately twenty per cent of the population speaks Spanish. See MLA Language Map Data Center, http://www.mla.org/map_data (under the heading "US, State, Region, or Division" select "State"; "Florida"; then "Show Results") (last visited Jan. 13, 2015).

As Judge Villanti properly points out, the trial court's prohibition on the Mother's ability to speak to her child in Spanish has an adverse effect on the child's ties to her mother and the child's Hispanic heritage. But the adverse impact of the order is even broader. Although the Mother is fluent in English, the members of her extended family may not speak English at all—or, at least not as fluently as the Mother. The trial court's interference with the child's ability to learn to speak Spanish from the Mother will make it difficult for her to communicate with her maternal grandparents, aunts and uncles, cousins, and their friends to the extent that these persons are not fluent in English. See Lupe S. Salinas, Linguaphobia, Language Rights, and the Right of Privacy, 3 Stan. J. Civ. Rts. & Civ. Liberties 53, 67 (2007). Neither the Father nor the trial court can properly cut the child off from meaningful contact with her maternal relatives by prohibiting the Mother from speaking to the child in Spanish.

The trial court's order also violates the Mother's most basic rights. More than ninety years ago, the United States Supreme Court declared that the agents of the state may not tell parents what languages they may teach their children. Meyer v. Nebraska, 262 U.S. 390, 401 (1923) ("[T]he individual has certain rights which must be

- 15 -

respected.  The protection of the Constitution extends to all, to those who speak other languages as well as to those born with English on the tongue."); see generally William G. Ross, A Judicial Janus: Meyer v. Nebraska in Historical Perspective, 57 U. Cin. L. Rev. 125 (1988) (discussing the historical background of the United States Supreme Court's decision in Meyer, including the anti-German hysteria following the entry of the United States into World War I that led many states to enact laws restricting the instruction of children in foreign languages, especially German).  Here, the trial court's order improperly infringes on the Mother's constitutional right to determine the language or languages about which her child may receive instruction.

In addition, the Florida Constitution guarantees its citizens the right of privacy.  In this regard, Article I, section 23 provides, in pertinent part, as follows: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."  Undoubtedly, the sphere of private life in which one must be let alone, free from governmental intrusion, includes the right to speak with one's child in the language of one's choosing and not to have that choice dictated by the agents of the state.  See Kirton v. Fields, 997 So. 2d 349, 352 (Fla. 2008) ("Parental authority over decisions involving their minor children derives from the liberty interest contained in the Fourteenth Amendment to the United States Constitution and the guarantee of privacy in article I, section 23 of the Florida Constitution.").

Sadly, the trial court's order in this case prohibiting the Mother from speaking Spanish to her daughter is not an isolated incident.  One commentator reports that trial judges in Texas and Nebraska have issued similar edicts prohibiting parents

from speaking Spanish to their children. Salinas, <u>supra</u>, at 69-72. Discussing the constitutional issues raised by one of these cases, the editorial board of <u>The Houston Chronicle</u> opined, "We skirt dangerously close to losing a basic right when we allow a judge, for whatever noble purpose, to dictate what we can say and how we can say it, even in our own homes." Salinas, <u>supra</u>, at 70 (quoting Editorial, <u>Language Barrier: No Spanish Order Punctures First Amendment</u>, Hous. Chron., Aug. 23, 2000, at A26).

Under section 61.13(2)(c), Florida Statutes (2012), the trial court has broad authority to determine all matters relating to parenting and time-sharing of minor children in accordance with the best interests of the child. However, the trial court's authority is not so broad that it extends to controlling what language or languages a parent may speak with his or her child. <u>Cf.</u> <u>Bennett v. Bennett</u>, 73 So. 2d 274, 279 (Fla. 1954) (holding that a trial court had no power to tell the parents what schools their children should attend); <u>Abbo v. Briskin</u>, 660 So. 2d 1157, 1161 (Fla. 4th DCA 1995) (holding that a trial court had no power over the religious beliefs and training of a child over the specific objection of one of the parents). In my view, Florida's trial courts have no business telling parents what languages they must speak or must not speak with their children.