# Third District Court of Appeal

## State of Florida

Opinion filed June 20, 2018.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D17-1553
Lower Tribunal No. 16-1705

————————————

**David Solomon,**
Appellant,

vs.

**Sofia Vasquez Solomon,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Valerie Manno Schurr, Judge.

Nancy A. Hass, P.A., and Nancy A. Hass (Fort Lauderdale), for appellant.

Cynthia J. Dienstag, P.A., and Cynthia J. Dienstag, for appellee.

Before ROTHENBERG, C.J., and LAGOA and LOGUE, JJ.

LAGOA, J.

David Solomon (the "husband") appeals from a Final Judgment of Dissolution of Marriage with Dependent or Minor Children (the "Final

Judgment"), and he raises several arguments on appeal, only one of which warrants discussion. Because the Final Judgment does not set forth specific steps that the husband must take in order to obtain unsupervised time sharing with his children, we reverse and remand to the trial court for the limited purpose of setting forth such steps, and otherwise affirm.

I.    FACTUAL AND PROCEDURAL HISTORY

The husband and Sofia Vasquez (the "wife") were married on July 12, 2001. The husband and wife have two minor children from the marriage. The wife filed a petition for dissolution of marriage on January 25, 2016. With the filing of the petition for dissolution, the wife also obtained a temporary injunction for protection against domestic violence, which prevented the husband from having contact with the wife and the children. The husband filed a counter-petition for dissolution of marriage.

On April 19, 2016, the trial court entered an agreed order appointing Jerome H. Poliacoff, Ph.D. ("Poliacoff"), to examine the parties and the children and make recommendations pursuant to section 61.13, Florida Statutes (2016). Poliacoff rendered his report on July 11, 2016 (the "Poliacoff Report"). Poliacoff recommended supervised visitation between the husband and the children, which "should begin with a goal of ending in a short time frame." Under a section entitled "Review and Revision," Poliacoff recommended that the plan be reviewed

2

every three months by a guardian ad litem with the stated goal of increasing access time for the husband with the children.

The husband states that on July 13, 2016, the parties agreed to extend the temporary injunction for a year and to amend the temporary injunction to provide that the husband have supervised time-sharing with the children in accordance with the Poliacoff Report. On August 15, 2016, the trial court entered an agreed order appointing Terilee Wunderman, Ph. D., as guardian ad litem for the children.

The matter proceeded to trial on April 20, 2017. On May 3, 2017, the trial court entered a Final Judgment, and attached to the Final Judgment were the Poliacoff Report and a Guardian ad Litem Status Report Update dated April 13, 2017 (the "Guardian's Status Report"). The Guardian's Status Report recommended that the husband continue with his individual therapy and that "[u]nsupervised visits between [the husband and the children] should be considered as the next step in this family's healing process."

Paragraph "5.C." of the Final Judgment, entitled "Parenting Plan," provides in relevant part:

> The Court adopts the Evaluation of Jerome H. Poliacoff, PhD, attached as Exhibit B, and the Guardian Ad Litem Status Report Update dated April 13, 2017, attached as Exhibit C, as the Parenting Plan to be followed by the parties at this time. The Father's supervised time sharing shall continue . . . . Terrilee Wunderman shall continue her role as Guardian Ad Litem for the two minor children pursuant to previous court order. Individual therapy for

3

the Husband shall continue . . . .   The Wife and the children shall participate in family therapy on an as needed basis.

On May 18, 2017, the husband filed a Motion for Rehearing and/or Reconsideration.  On June 9, 2017, the trial court denied the Motion for Rehearing and/or Reconsideration.  This appeal followed.

II.   ANALYSIS

"The failure to 'set forth any specific requirements or standards' for the alleviation of timesharing restrictions is error.  This applies to both the prevention of timesharing altogether and to restrictions."  Witt-Bahls v. Bahls, 193 So. 3d 35, 38 (Fla. 4th DCA 2016) (citation omitted) (quoting Ross v. Botha, 867 So. 2d 567, 571 (Fla. 4th DCA 2004)).  Where a final judgment fails to set forth what steps a parent must take in order to establish unsupervised timesharing, the final judgment must be reversed and remanded for the trial court to identify such steps.  Tzynder v. Edelsburg, 184 So. 3d 583, 583 (Fla. 3d DCA 2016) (reversing and remanding for the trial court to identify the necessary steps for the parent to reestablish unsupervised timesharing with child where the final judgment restricted timesharing to supervised contact one time per week); see also Curiale v. Curiale, 220 So. 3d 554, 555 (Fla. 2d DCA 2017); Perez v. Fay, 160 So. 3d 459, 466 (Fla. 2d DCA 2015) (finding that "the amended supplemental final judgment is legally deficient on its face because it does not set forth what steps the Mother must take

4

to regain primary residential custody and/or meaningful unsupervised time-sharing with her daughter"). But see Dukes v. Griffin, 230 So. 3d 155, 157 (Fla. 1st DCA 2017) (stating that vesting trial courts with authority to enumerate steps to re-modify timesharing schedules and alleviate timesharing restrictions "appears contrary to § 61.13(3), Florida Statutes, which sets forth its own specific requirements for modifying parenting plans, including time-sharing schedules" and certifying conflict with Perez, 160 So. 3d 459, and Witt-Bahls, 193 So. 3d 35, and other cases addressing the issue).

Here, the trial court adopted the Poliacoff Report and the Guardian's Status Report as the parenting plan in the Final Judgment. The Poliacoff Report recommended that the supervised visitation between the husband and his children "begin with a goal of ending in a short time frame" and that the plan be reviewed every three months by a guardian ad litem with the stated goal of increasing access time for the husband with the children. The Guardian's Status Report, issued one month before the final judgment, recommended that "[u]nsupervised visits between [the husband and the children] should be considered as the next step in this family's healing process." Each report, therefore, stated that the supervised nature of the timesharing should not be permanent, but neither identified the steps necessary for the father to terminate supervised timesharing. In adopting the reports as the parenting plan, the trial court therefore failed to set forth specific

5

benchmarks or identify for the husband the steps necessary to terminate the supervised timesharing. Although a trial court is not required to set forth "every minute detail of the steps to reestablish unsupervised timesharing[,] . . . [t]he requirement is for the [husband] to walk out of the courtroom knowing that if [he] satisfactorily accomplishes relatively specific tasks, [he] will be able to reestablish unsupervised timesharing." Witt-Bahls, 193 So. 3d at 39 (citation omitted).

We therefore reverse the Final Judgment to the extent it fails to provide the husband with the specific steps he must undertake in order to obtain unsupervised timesharing with his children. On remand, the trial court is instructed to amend the Final Judgment to identify such steps. See Tzynder, 184 So. 3d at 583. The Final Judgment is otherwise affirmed.

Affirmed in part, reversed in part, and remanded.

ROTHENBERG, C.J., and LOGUE, J., concur.

LAGOA, J., specially concurring,

I write separately to address section 61.13(3), Florida Statutes (2018).[i]  Our precedent in Tzynder v. Edelsburg, 184 So. 3d 583 (Fla. 3d DCA 2016), as well as opinions from other district courts, Witt-Bahls v. Bahls, 193 So. 3d 35 (Fla. 4th DCA 2016), and Perez v. Fay, 160 So. 3d 459 (Fla. 2d DCA 2015), require the trial court to set forth in its final judgment or order the specific steps necessary to reestablish unsupervised timesharing, and the trial court's failure to include such steps render the judgment or order legally deficient.  Because we are bound by our prior precedent, I join the majority's opinion.

These cases, however, appear to establish a judicially created requirement not supported by the statutory language of section 61.13(3).  "'[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'" Atwater v. Kortum, 95 So. 3d 85, 90 (Fla. 2012) (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984)); see also DMB Inv. Tr. v. Islamorada, Village of Islands, 225 So. 3d 312, 317 (Fla. 3d DCA 2017) ("'The Legislature must be understood to mean what it has plainly expressed and this excludes construction.  The Legislative

intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms.'" (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 454 (Fla. 1992))). "Florida courts are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.'" Brown v. City of Vero Beach, 64 So. 3d 172, 174 (Fla. 4th DCA 2011) (emphasis omitted) (quoting Holly, 450 So. 2d at 219).

The language of section 61.13(3) is clear and unambiguous, and sets forth specific requirements for modifying parenting plans including time-sharing schedules. While it is certainly understandable that a parent would want to know the specific steps necessary to restore time-sharing with his or her child, "it is not the prerogative of the courts to rewrite a statute," Westphal v. City of St. Petersburg, 194 So. 3d 311, 321 (Fla. 2016), and section 61.13(3) does not mandate the inclusion of such steps in a trial court's judgment or order. Because section 61.13(3) contains no language mandating that a trial court set forth the specific steps a parent must take in order to reestablish time-sharing with a child, I therefore agree with the reasoning set forth in our sister court's decision in Dukes v. Griffin, 230 So. 3d 155 (Fla. 1st DCA 2017), and would certify conflict.

8

[i] Section 61.13(3) states, in relevant part:

(3) For purposes of establishing or modifying parental responsibility and creating, developing, approving, or *modifying a parenting plan, including a time-sharing schedule*, which governs each parent's relationship with his or her minor child and the relationship between each parent with regard to his or her minor child, the best interest of the child shall be the primary consideration. A determination of parental responsibility, a parenting plan, or a time-sharing schedule *may not be modified* without a showing of a substantial, material, and unanticipated change in circumstances and a determination that the *modification* is in the best interests of the child. Determination of the best interests of the child shall be made by evaluating all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family, including, but not limited to:

(a) The demonstrated capacity and disposition of each parent to facilitate and encourage a close and continuing parent-child relationship, to honor the time-sharing schedule, and to be reasonable when changes are required.

(b) The anticipated division of parental responsibilities after the litigation, including the extent to which parental responsibilities will be delegated to third parties.

(c) The demonstrated capacity and disposition of each parent to determine, consider, and act upon the needs of the child as opposed to the needs or desires of the parent.

(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

9

(e) The geographic viability of the parenting plan, with special attention paid to the needs of school-age children and the amount of time to be spent traveling to effectuate the parenting plan. This factor does not create a presumption for or against relocation of either parent with a child.

(f) The moral fitness of the parents.

(g) The mental and physical health of the parents.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

(j) The demonstrated knowledge, capacity, and disposition of each parent to be informed of the circumstances of the minor child, including, but not limited to, the child's friends, teachers, medical care providers, daily activities, and favorite things.

(k) The demonstrated capacity and disposition of each parent to provide a consistent routine for the child, such as discipline, and daily schedules for homework, meals, and bedtime.

(*l*) The demonstrated capacity of each parent to communicate with and keep the other parent informed of issues and activities regarding the minor child, and the willingness of each parent to adopt a unified front on all major issues when dealing with the child.

(m) Evidence of domestic violence, sexual violence, child abuse, child abandonment, or child neglect, regardless of whether a prior or pending action relating to

those issues has been brought. If the court accepts evidence of prior or pending actions regarding domestic violence, sexual violence, child abuse, child abandonment, or child neglect, the court must specifically acknowledge in writing that such evidence was considered when evaluating the best interests of the child.

(n) Evidence that either parent has knowingly provided false information to the court regarding any prior or pending action regarding domestic violence, sexual violence, child abuse, child abandonment, or child neglect.

(o) The particular parenting tasks customarily performed by each parent and the division of parental responsibilities before the institution of litigation and during the pending litigation, including the extent to which parenting responsibilities were undertaken by third parties.

(p) The demonstrated capacity and disposition of each parent to participate and be involved in the child's school and extracurricular activities.

(q) The demonstrated capacity and disposition of each parent to maintain an environment for the child which is free from substance abuse.

(r) The capacity and disposition of each parent to protect the child from the ongoing litigation as demonstrated by not discussing the litigation with the child, not sharing documents or electronic media related to the litigation with the child, and refraining from disparaging comments about the other parent to the child.

(s) The developmental stages and needs of the child and the demonstrated capacity and disposition of each parent to meet the child's developmental needs.

11

(t) Any other factor that is relevant to the determination of a specific parenting plan, including the time-sharing schedule.

§ 61.13(3), Fla. Stat. (2018) (emphasis added).