DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES DELOATCH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-538

[May 24, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; William L. Roby, Judge; L.T. Case No. 562018CF003118A.

Carey Haughwout, Public Defender, and Timothy Wang, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

We address a case of first impression concerning the defendant's conviction for engaging in sexual misconduct with a patient, as prohibited by section 394.4593(2), Florida Statutes (2018). The defendant argues the statute's text requires us to reverse his conviction. We agree and reverse.

The State charged the defendant with violating section 394.4593(2), Florida Statutes (2018), which provides:

> An employee[1] who engages in sexual misconduct with a patient who:
>
> (a) Is in the custody of the department;[2] or

---

[1] The parties agree the defendant **was** an "employee." § 394.4593(1)(a), Fla. Stat. (2018).

[2] The parties agree the victim was **not** in the custody of the Department of Children and Families ("DCF").

> (b) Resides in a receiving facility or a treatment facility, as those terms are defined in s. 394.455,
>
> commits a felony of the second degree . . . .

"Sexual misconduct" refers to "any [delineated] sexual activity between an employee and a patient," irrespective of consent. § 394.4593(1)(c), Fla. Stat. (2018).

The court denied the defendant's motions for judgment of acquittal. A jury convicted the defendant. The court sentenced him to seven years in prison followed by eight years' sex offender probation.

- ***The Facts***

The defendant worked at a treatment facility ("facility") for five years prior to his arrest. His job duties included checking vitals, conducting safety checks, and assisting with group education. The defendant had systematic interaction with the clients and played an active role in determining the amount of withdrawal medication which each client received.

The victim voluntarily admitted herself to the facility for detox. The incident occurred on the victim's second day of treatment. She testified she was experiencing extreme withdrawal symptoms that day and was asking around for a cigarette.

The victim testified she was approached by the defendant, who offered her a cigarette if she understood "one hand washes the other." The victim testified she understood this was a proposal to engage in a sexual quid-pro-quo but thought it would be minimal.

The defendant gestured for the victim to follow him into an office. She followed. The defendant shut the door and proceeded to have sex with the victim. The victim testified she froze and was unable to speak.

The victim testified she did not consent to having sex with the defendant. She would not have followed the defendant into the room if she was not experiencing extreme withdrawal symptoms or had known what the defendant expected. The victim left the facility the next day. She reported the incident to the facility on her exit, and later to the police.

When the defendant was first interviewed, he denied the allegations and offered to provide a DNA sample. When his DNA profile matched the DNA

2

collected through the victim's rape kit, he was arrested. The defendant continued to deny the allegations through trial. In his closing argument, defense counsel argued the defendant did not have sex with the victim and claimed the DNA was erroneous. At sentencing, however, the defendant admitted to having "consensual sex" with the victim.

The defendant moved for a judgment of acquittal ("JOA") after the State's case, submitting a written motion. The defendant argued the State could not prove its charge for three reasons. First, the victim did not meet the definition of "patient." Second, the facility did not meet the definition of "receiving facility" or "treatment facility." And third, the victim was not in "custody."

The threshold issue was whether the victim was a "patient" within the meaning of section 394.4593, Florida Statutes (2018). For the purposes of Chapter 394, the Florida Legislature, at the time of this alleged crime, had defined "patient" to mean "any person, **with or without a co-occurring substance abuse disorder**, who is held or accepted for mental health treatment." § 394.455(31), Fla. Stat. (2018) (emphasis added).[3]

Citing Chapter 394's definition of "patient," the defendant argued he could not be convicted without evidence the victim received "mental health treatment" concurrent to, or independent of, her substance abuse treatment. In short, the State could not prove the victim was a "patient" within the meaning of Chapter 394, Florida Statutes (2018).

The State urged the trial court to interpret the term "patient" according to its plain and obvious meaning, "patients in DCF custody or patients residing in a receiving or treatment facility." Alternatively, the State argued the victim met Chapter 394's definition of "patient" because her substance abuse treatment **was** mental health treatment.

The defendant countered that how the facility treated its "patients" was irrelevant. According to the defendant, the controlling factor was how the patients' respective conditions, presentation of symptoms, and corresponding medical treatments were governed under Florida law. Ultimately, the trial court agreed with the State and denied the defendant's JOA motion.

Our supreme court has not issued standard jury instructions for the charged crime. Thus, both parties submitted proposed special jury instructions. The defendant requested Chapter 394's definitions of

---

[3] Section 394.455(31), defining "patient," changed to 394.455(32) in 2020.

"mental illness," "patient," "receiving facility," and "treatment facility" be provided to the jury. § 394.455, Fla. Stat. (2018). The trial court adopted the State's instructions but ordered amendments to include the defendant's requested terms of "receiving facility," "treatment facility," and "mental illness." The trial court denied the defendant's request to include Chapter 394's definition of "patient." The jury convicted the defendant.

The defendant now appeals his conviction and sentence.

- *The Issue*

The defendant first argues the trial court erred in denying his JOA motion because (1) the court disregarded Chapter 394's definition of "patient" and (2) the statutorily defined term "patient" requires proof the victim received "mental health treatment."

The State responds the trial court properly applied the term's plain and ordinary meaning and suggests we should look to legislative intent to protect any patient in DCF custody or residing at a receiving or treatment facility, which includes the victim. Alternatively, the State suggests competent substantial evidence proved the victim fit within the statutorily defined term "patient." The State also suggests "all substance abuse treatment is mental health treatment."

We have de novo review of a trial court's decision on a motion for JOA. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). We also review questions of statutory interpretation de novo. *Paul v. State*, 129 So. 3d 1058, 1061 (Fla. 2013).

The threshold question is who qualifies as a "patient" within the meaning of section 394.4593, Florida Statutes (2018). "As with the interpretation of any statute, the starting point of analysis is the actual language of the statute." *Brown v. City of Vero Beach*, 64 So. 3d 172, 174 (Fla. 4th DCA 2011) (citing *Cont'l Cas. Co. v. Ryan Inc. E.,* 974 So. 2d 368, 374 (Fla. 2008)).

"The 'plain meaning of the statute is always the starting point in statutory interpretation.'" *Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (citing *GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007)). Indeed, "[w]hen a statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." *City of Vero Beach*, 64 So. 3d at 174 (quoting *Lee Cnty. Elec. Coop., Inc. v. Jacobs*, 820 So. 2d 297, 303 (Fla. 2002)).

4

Section 394.4593 was enacted in 2004 and is contained within The Florida Mental Health Act of 1971. *See* Ch. 2004–267, Laws of Fla. (codified at § 394.4593, Fla. Stat. (2004)). The defendant was convicted of violating subsection 394.4593(2), Florida Statutes (2018), which states:

> An employee who engages in sexual misconduct with a patient who:
>
> (a) Is in the custody of the department; or
>
> (b) Resides in a receiving facility or a treatment facility, as those terms are defined in s. 394.455
>
> commits a felony of the second degree . . . .

The statute defines only three terms: "employee," "sexual activity," and "sexual misconduct." § 394.4593(1)(a)–(c), Fla. Stat. (2018). The parties agreed to those definitions. The defendant conceded he **was** an "employee." The State conceded the victim **was not** "in the custody of the department." *See id.*

Section 394.4593, Florida Statutes (2018), does not define the term "patient," although it references the word six times. "Patient" is defined in Chapter 394's definition section.

The State urged the court to disregard the statutory definition of the term "patient" because the statute did not direct reference to the word's definition in Chapter 394. The trial court agreed, giving effect to only the terms "receiving facility" and "treatment facility." The defendant argued it was nonsensical to ignore the legislature's definition of "patient" while utilizing its other definitions.

Here, the legislature defined the term "patient," and instructed it be used in Chapter 394. "When a statute includes an explicit definition, [courts] must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart,* 530 U.S. 914, 942 (2000). Indeed, "[w]here the legislature has used particular words to define a term, the courts do not have the authority to redefine it." *Baker v. State*, 636 So. 2d 1342, 1343–44 (Fla. 1994). Thus, the trial court was required to use the defined term.

The State argues contrary intent appears on the face of section 394.4593, Florida Statutes (2018). The State suggests if the legislature had intended for the definition of "patient" in section 394.455 to be the

5

definition for "patient" in section 394.4593, the legislature would have referred to section 394.455 like it did with the terms "treatment facility" and "receiving facility." But "'[o]nly the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from that language." *Salinas v. United States*, 522 U.S. 52, 58 (1997) (citations omitted).

To fit within the statutory definition of "patient," the victim would have had to be "held or accepted for mental health treatment." § 394.455(31), Fla. Stat. (2018). Here, the victim was not "held," as she had admitted herself voluntarily. And the victim had not been accepted for mental health treatment. At no time did she testify she had sought or received mental health treatment, or that she had suffered from any mental health condition which may have been related to her substance abuse disorder. Rather, the parties agree, and the record reflects, the victim had voluntarily sought substance abuse services and received those services.

Chapter 394's legislative history also supports this reading of the statute. The legislature's definition of "patient" has been in existence for decades and was most recently revised in 2016. *See* Ch. 2016–241, § 87, at 83, Laws of Fla. In 2015, "patient" was defined as "any person who is held or accepted for mental health treatment." § 394.455(20), Fla. Stat. (2015).

In 2016, that definition was changed to "any person, with or without a co-occurring substance abuse disorder, who is held or accepted for mental health treatment." § 394.455(31), Fla. Stat. (2016). One constant remains through the definition's evolution: the person must have been held, or accepted, for mental health treatment.

The text of the session law enacting the crime charged is also informative. Section 394.4593, Florida Statutes (2004), originated as a bill titled, "An act relating to development services and mental health." Ch. 2004-267, Laws of Fla. (codified at § 394.4593, Fla. Stat.) The legislature explained the purpose and effect of the law being enacted:

> [This law] creat[es] ss. 393.135, 394.4593, and 916.1075, F.S.; defin[es] the terms "employee," "sexual activity," and "sexual misconduct"; provid[es] that it is a second-degree felony for an employee to engage in sexual misconduct **with certain developmentally disabled clients, certain mental health patients, or certain forensic clients; providing certain exceptions** . . . .

6

*Id.* (emphasis added). Thus, the legislative history supports the defendant's position that section 394.4593 applies only to "certain developmentally disabled clients, certain mental health patients, or certain forensic clients . . . provided exceptions." *See id.*

- ***Our Conclusion***

This leads us to but one conclusion: the victim was not a "patient" as defined by the Florida Legislature in Chapter 394, Florida Statutes (2018). *See* § 394.455(31), Fla. Stat. (2018). As such, the trial court erred in denying the defendant's motion for JOA. We therefore reverse and remand the case for the trial court to vacate the defendant's conviction and sentence.

*Reversed and remanded.*

GROSS, J., concurs.
FORST, J., concurs specially with opinion.

FORST, J., concurring specially.

I concur in the majority opinion's conclusion that the purported victim in this case was not a "patient" per section 394.4593, Florida Statutes (2018). I thus agree that reversal is appropriate.

Generally, words in a constitution, statute or contact are to be "understood in their ordinary, everyday meanings." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012) [hereinafter *Scalia & Garner*]. As such, the purported victim in this case would be considered a "patient" for purposes of section 394.4593, Florida Statutes (2018). However, this "most fundamental rule of interpretation" has exceptions. *Id.*

> [D]efinition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others. There would be little use in such a glossary if we were free in despite of it to choose a meaning for ourselves.

*Fox v. Standard Oil Co. of N.J.,* 294 U.S. 87, 96 (1935) (quoted in *Scalia & Garner, supra,* at 225).

7

In the instant case, the legislature provided a definition of the term "patient," applicable to its usage in section 394.4593. Title XXIX of the Florida Statutes is captioned as "Public Health" and encompasses chapters 381–408. Chapter 394 is captioned "Mental Health." That chapter's Part I "shall be known as 'The Florida Mental Health Act' or 'The Baker Act.'" § 394.451, Fla. Stat. (2018). Part I includes section 394.4593 ("Sexual misconduct prohibited; reporting required; penalties") and section 394.455 ("Definitions"). It would be absurd to conclude that Chapter 394, Part I's definitions section does not apply to a law set forth in the same chapter and the same part.

As discussed in the majority opinion, the definitions section states that "'Patient' means any person, with or without a co-occurring substance abuse disorder, who is held or accepted for mental health treatment." § 394.455(31), Fla. Stat. (2018). This is "the definition set before us by the lawmakers with [implicit] instructions to apply it to the exclusion of all others," including the common definition of the word "patient." *See Fox*, 294 U.S. at 96.

Arguably, the purported victim may have been considered a person "accepted for mental health treatment," as section 394.455 initially defined "patient." However, as the majority opinion points out, the statute was amended in 2016 to reflect that a person held or accepted for treatment is a "patient" if he or she either is without a substance abuse disorder or if the substance abuse disorder is "co-occurring," meaning the patient is receiving treatment for another disorder or illness in addition to treatment for a substance abuse disorder. § 394.455(31), Fla. Stat. (2016). Here, the purported victim in this 2018 case testified that she was voluntarily accepted to the treatment facility solely for substance abuse treatment.

This narrow reading is consistent with other chapters of the Florida "Public Health" laws. Chapter 394's Part IV is titled "Community Substance Abuse and Mental Health Services" and differentiates between the "disease[]" of "mental illness" and that of "substance abuse impairment." § 394.66(2), Fla. Stat. (2018). Moreover, whereas chapter 394 is titled "Mental Health," a separate "Public Health" provision, chapter 397, is titled "Substance Abuse Services." Rightly or wrongly, substance abuse disorder is treated by the Florida legislature as not encompassed by the terms "mental health" or "mental illness" impairment.[4] "[T]he

_____

[4] The National Institute of Mental Health's website maintains that "[s]ubstance use disorder (SUD) is a treatable mental disorder that affects a person's brain and behavior, leading to their inability to control their use of substances like legal or illegal drugs, alcohol, or medications . . . . People with a SUD may also have

plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)).

Section 394.4593, Florida Statutes (2018), is a means of protecting vulnerable individuals receiving treatment in State-regulated facilities and, in recognition of the purported victim's impairment, doing away with the inquiry as to whether the sexual activity with a facility's employee was or was not "consensual." If the legislature believes that the same protection afforded individuals impaired by "mental illness" should be extended to those impaired by "substance abuse disorder" who do not manifest a *co-occurring* mental health impairment, the legislature can achieve that goal by either amending the definition of "patient," as currently contained in section 394.455(32), Florida Statutes (2022), or by adding a provision mirroring section 394.4593 to Chapter 397.

In the meantime, prosecutors remain able to proceed against treatment facility employees who are alleged to have engaged in nonconsensual sexual relations with a patient (applying the normal meaning of that term) by charging the employee under the sex offender statutes protecting the general population.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***

---

other mental health disorders, and people with mental health disorders may also struggle with substance use. These other mental health disorders can include anxiety disorders, depression, attention-deficit hyperactivity disorder (ADHD), bipolar disorder, personality disorders, and schizophrenia, among others." *Substance Use and Co-Occurring Mental Disorders*, NAT'L INST. MENTAL HEALTH, https://www.nimh.nih.gov/health/topics/substance-use-and-mental-health. As noted above, the purported victim did not testify that she had "other mental health disorders."